**In re DUNN; Pipes, Appellant.**

[Cite as *In re Dunn* (1995), 102 Ohio App.3d 217.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–94–32.

Decided March 29, 1995.

*Wiedemann & Taube* and *Donald Taube,* for appellant.

*James P. Luton,* for appellee.

SHAW, Judge.

Michelle Dunn, n.k.a. Pipes, appellant, appeals from the judgment of the Common Pleas Court of Marion County, Juvenile Division, denying her motion for Civ.R. 60(B) relief from a judgment approving the surrender of her child, Kendra Mae Dunn, to the Marion County Children Services Board ("MCCSB") and awarding permanent custody to MCCSB.

The record reveals that Kendra has been in the temporary custody of MCCSB since August 1990. On November 24, 1992, MCCSB filed an amended case plan which provided, *inter alia*, that "Kendra will be adopted by her cousin in Kentucky with an agreement for visitation for her mother." On December 23, 1992, the appellant signed an agreement permanently surrendering her child to MCCSB. At the time of her surrender, a complaint for permanent custody was pending regarding this child. A hearing was held on the same day appellant entered into the agreement, and the trial court conditionally approved the surrender pending the outcome of an appeal by the foster parents in our court. Thereafter, on August 18, 1993, the court entered its order accepting appellant's surrender and granting permanent custody to MCCSB. The child was then placed with appellant's cousin in Kentucky.

However, subsequent to that placement, appellant's cousin indicated that she no longer wanted to adopt Kendra. On March 24, 1994, appellant moved for relief from the judgment pursuant to Civ.R. 60(B), alleging that MCCSB made a misrepresentation concerning placement of Kendra and the rights of appellant to visit with said child. The trial court denied appellant's motion, finding that there was no misrepresentation by MCCSB at the surrender hearing and that all parties in good faith intended for the appellant's relative to adopt the child.

■ The appellant now appeals from the trial court's decision and for her sole assignment of error asserts:

"The trial court committed prejudicial error in overruling the 60(B) motion of Michelle Dunn Pipes, the mother of Kendra, for the permanent voluntary surrender she executed on December 23, 1992, was not freely, knowingly and intelligently given, and was obtained by misunderstanding."

Civ.R. 60(B) provides, in pertinent part, as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; * * * or (5) any other reason justifying relief from the judgment. The motion shall be made within a reason-

able time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken."

Absent a showing of abuse of discretion, an appellate court will not disturb a trial court's ruling denying relief from judgment. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122, 1123–1124.

On appeal, appellant asserts that it is obvious in this case that she misunderstood the effect of signing the permanent surrender form. Appellant claims that she surrendered custody under the mistaken understanding that only her cousin could adopt Kendra, whereby she could preserve her rights of visitation. Thus, appellant claims that her surrender was not freely, knowingly, and voluntarily given.

It is apparent that if relief from judgment is to be granted in this case, it must be under Civ.R. 60(B)(1), which permits relief in cases of mistake, inadvertence, surprise or excusable neglect. Upon a thorough review of the record, we find that appellant has demonstrated that she is entitled to relief from the judgment.

"An agreement by a child's parents or legal guardian to surrender a child to the permanent custody of a certified association or institution described in R.C. 5103.15 constitutes a contract where accepted by such association or institution and when voluntarily made without fraud or misrepresentation." *In re Miller* (1980), 61 Ohio St.2d 184, 189, 15 O.O.3d 211, 214, 399 N.E.2d 1262, 1265. See, also, *Manning v. Miami Cty. Children's Serv. Bd.* (1985), 18 Ohio St.3d 211, 18 OBR 273, 480 N.E.2d 770. Pursuant to R.C. 5103.15(B), court approval is required when the parent makes an agreement surrendering a child into the permanent custody of a public children services agency. R.C. 5153.16(B) authorizes the county agency to enter into such agreements, provided juvenile court consent is obtained. In *In re Miller, supra,* the Ohio Supreme Court explained the court's function as follows:

"It is the Juvenile Court's function in consenting to a permanent surrender to insure that the surrender is made by the parent voluntarily, with full knowledge of the legal import of the relinquishment of parental rights accomplished thereby; and to insure that the child welfare agency does not enter into improvident contracts."

While we are cognizant that the case of *In re Adoption of Brunner* (Mar. 11, 1993), Franklin App. No. 92AP–1447, unreported, 1993 WL 69471, dealt with an adoption, we believe the court analyzed the validity of a parent's consent under circumstances similar to the case *sub judice.* In that case, the mother filed a Civ.R. 60(B) motion to vacate the adoption order, alleging that her consent was not voluntary because it was based upon a misunderstanding of the adoption's effect upon her parental rights. The facts in that case reveal that the adoptive

parents had signed an affidavit promising to provide the mother reasonable visitation with the child after the adoption.

The *Brunner* court defined a valid consent as:

" ' * * * [O]ne which has been freely, knowingly, and voluntarily given with a full understanding of the adoption process and the consequences of one's actions. * * * The consent must be of one's "own volition, free from duress, fraud, or other consent-vitiating factors and with full knowledge of essential facts." * * * It is generally well-established that fraud, duress, undue influence, overreaching, mistake, or the like will justify a court in finding that consent was not freely and voluntarily executed.' *Id.*, quoting *In re Adoption of Infant Girl Banda* (1988), 53 Ohio App.3d 104, 108 [559 N.E.2d 1373, 1378]."

In holding that there was not competent, credible evidence presented to conclude that the mother had given a voluntary consent, the court stated that:

"While it does not appear that appellees intended to deceive or defraud appellant by creating an affidavit which evidenced a 'side' agreement between the parties that appellee did not intend to abide by, the evidence was clear that appellant was only willing to consent to the adoption on the condition that she had a right to future contact with Victor and that she would continue as his mother. Since an adoption would, in fact, take away all of appellant's parental rights, appellant lacked the full knowledge of the essential facts and consequences necessary to execute a voluntary consent. * * * The evidence is equally clear that, despite repeated attempts to impress upon appellant that adoption severed all her parental rights, appellant nonetheless understood, based on her parents' promises, that Victor would remain her son, legally as well as in fact. It appears that appellant considered the matter to be more in the nature of a custody arrangement than an adoption."

In the case *sub judice*, the record reveals that the trial court explained at the permanent surrender hearing that appellant would be asked to acknowledge that she understood and was in agreement with the signed surrender document. The judge then read into the record the permanent surrender agreement, which stated that appellant requests MCCSB to take permanent custody and control of the child, that appellant agrees and understands that by signing the document all her rights as a parent to the child will end, including all rights to visitation, communication, support, religious affiliation and the right to consent to the child's adoption, and further, that the agency shall have permanent custody of the child and shall have the right to place the child in any adoptive home or other substitute care settings if it is in the child's best interest. Appellant thereafter acknowledged signing that document.

However, the record reveals that appellant's counsel then informed the court about a "side" agreement that had been reached with MCCSB that Kendra would

be placed with appellant's cousin in Kentucky for adoption and that appellant would retain visitation rights. Although the court acknowledged and incorporated the parties' "side" agreement into its approval of the surrender, the court also stated that it could not dictate what an adoption court in Kentucky would order.

Finally, the court questioned appellant about signing a surrender document entitled "Understanding as to Permanent Surrender," which indicated that the following alternatives to surrendering her parental rights were provided, offered or discussed: home-based services and placement services, with relative placement marked. Appellant acknowledged that she understood that document.

At the hearing on appellant's Civ.R. 60(B) motion, appellant testified that she signed the permanent surrender agreement with the understanding that her cousin would adopt Kendra and that she would retain her visitation rights. She also testified that MCCSB never discussed what would occur in the event her cousin did not adopt Kendra. In addition, the MCCSB supervisor testified that the case plan discussed with appellant provided for Kendra to be adopted by appellant's cousin in Kentucky with visitation for appellant. She also testified that they only discussed placement with appellant's cousin and not anyone else.

According to her former attorney's testimony, appellant had indicated that she wanted to surrender Kendra under circumstances where she would retain visitation rights with Kendra. Prior to the surrender, they had discussed that appellant did not want the foster parents to get custody of Kendra. It appears that there was also some problem regarding medical insurance with appellant's relative in Kentucky. For those reasons, they went the route of permanent surrender to MCCSB.

Appellant's former attorney further testified that on December 23, 1992, appellant executed the surrender after reviewing MCCSB's amended case plan. As noted earlier, this plan specifically provided that "Kendra will be adopted by her cousin in Kentucky with an agreement for visitation for her mother." Additionally, he confirmed that appellant signed the permanent surrender with the understanding that the child would be placed with her cousin and that she would be granted visitation.

Based upon all of the foregoing, it is evident from the record that appellant agreed to surrender permanent custody of her child to MCCSB provided that MCCSB place Kendra with appellant's cousin, whereby appellant could retain her visitation rights. Apparently because of the placement agreement with MCCSB, there were no discussions with appellant about what would happen in the event her cousin did not adopt Kendra. Furthermore, we do not believe the trial court fully inquired into the matter of the "side" agreement to determine whether appellant understood, despite the agreement, that she would have no rights regarding her child.

■   We do not find any indication in this record of deliberate misrepresentation or fraud by any party involved in this case.   However, because a permanent surrender does, in fact, sever all of appellant's parental rights; we do believe that appellant lacked full knowledge of the essential facts and consequences necessary to execute a voluntary surrender.   See *In re Adoption of Brunner, supra.*   We therefore conclude that appellant executed the surrender with a misunderstanding of her rights upon surrender of her child.

Lastly, appellant has demonstrated that her motion was made within a reasonable time, which was not more than one year after the judgment had been entered accepting appellant's surrender.   Appellant testified that she first learned at the end of December 1993 that her cousin had changed her mind about adopting Kendra.   Within three months, appellant moved for relief under Civ.R. 60(B).

In accordance with the foregoing analysis, we therefore conclude that the trial court erred in denying appellant's motion for relief from judgment.   Accordingly, appellant's sole assignment of error is sustained and the judgment of the trial court overruling appellant's Civ.R. 60(B) motion for relief from judgment is reversed.   Pursuant to App.R. 12(B), this court further remands this matter to the trial court with instructions to vacate its order dated August 18, 1993, which approved the surrender and granted permanent custody to MCCSB.

*Judgment reversed*
*and order vacated.*

THOMAS F. BRYANT, P.J., and EVANS, J., concur.