DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Melissa Conley, the mother of Candance Conley, appeals from an order granting the Lorain County Children's Services Board ("CSB") permanent custody of Candance. This Court affirms.
 I.
Melissa gave birth to Candance on December 25, 1995. By February 20, 1996, Candance had been hospitalized twice and had gained very little weight. As a result, CSB took custody of Candance. Shortly thereafter, Candance was adjudicated dependent and CSB was granted temporary custody.
CSB prepared a case plan for Melissa with the intention of correcting Melissa's parenting problems. When it became clear that Melissa was unable to parent independently, the maternal grandparents were added to the case plan with the understanding that they would eventually take custody of Candance. Nevertheless, the case plan objectives were never met.
On February 20, 1998, after several extensions of the temporary custody order, CSB moved for permanent custody of Candance. The parties conducted discovery and were prepared for a contested hearing. Prior to the contested hearing, the parties signed an entry granting CSB permanent custody of Candance and providing for an open adoption. Open adoptions are currently provided for by statute, R.C. 3107.60 et seq., and generally allow for visitation by the birth parents, see, generally, In reAdoption of Zschach (1996), 75 Ohio St.3d 648. The trial court subsequently approved the entry that had been signed by the parties and purported to adopt the parties' agreement concerning open adoption, stating:
 The court expressly finds and determines that it is in the best interest of the child to provide for an open adoption. The court further finds that the minor child's mother, Melissa Conley, agrees to terms of open adoption which would allow her quarterly contact with the child at the home of the adoptive parents, with such visits being cooperatively arranged between the adoptive and biological mother, and conducted on such dates and at such times as the parties shall agree; that current foster parents have expressed a desire and willingness to commit to adoption of the child, and have indicated through [CSB] that, as adoptive parents, they would be amenable to an open adoption; * * * and that the agency should provide for an open adoption in accordance with [R.C.] 3107.64. Said open adoption shall be limited exclusively to the biological mother of the minor child and the adoptive parents, and shall not provide for the inclusion of any other third parties.
This order was signed by the parties and their attorneys. Melissa appeals from this order.
 II.
Melissa's sole assignment of error states:
 THE JUNE 16, 1998 JOURNAL ENTRY SHOULD BE REVERSED BECAUSE THE VISITATION AS PROMISED WAS NOT PROVIDED FOR.
Although Melissa's appellate brief is not very detailed, this Court will address the argument that Melissa appears to have made. Melissa appears to claim that she had agreed to surrender permanent custody of Candance to CSB in exchange for an open adoption that would include visitation between Candance and her biological sister. Melissa further claims that during the weeks following the hearing, Candance's biological sister was not permitted visitation. Melissa argues that, because CSB did not satisfy that portion of the agreement, she should be permitted to withdraw her consent to permanent custody and contest the issue of permanent custody at a new trial.
R.C. 5103.15(B)(1) allows the parents of a child to enter into an agreement with a public children services agency to surrender the child into the permanent custody of the agency, so long as the agreement is approved by a juvenile court. "It is the Juvenile Court's function in consenting to a permanent surrender to insure that the surrender is made by the parent voluntarily, with full knowledge of the legal import of the relinquishment of parental rights accomplished thereby." In re Miller (1980),61 Ohio St.2d 184, 191. As a result, a permanent surrender agreement may be set aside where the parent's consent is deemed involuntary. See, e.g., Marich v. Knox Cnty. Dept. of Human Serv. (1989),45 Ohio St.3d 163 (holding parental consent invalid based on exercise of undue influence by the public agency that obtained custody of the child).
In a situation similar to the instant case, the Marion County Court of Appeals vacated a parent's consent to permanent custody after finding that the parent had not been fully informed of the consequences of the surrender agreement. In re Dunn (1995),102 Ohio App.3d 217. In Dunn, the mother agreed to surrender permanent custody of her child if her cousin in Kentucky would adopt the child and allow the mother visitation. Although the trial court informed the mother that it could not predict what a Kentucky court would do, nobody discussed what would happen if the cousin was unable to adopt the child. When the cousin subsequently refused to adopt the child, the mother filed a Civ.R. 60(B) motion for relief from judgment. The trial court denied the motion and the mother appealed. The court of appeals reversed and vacated the award of permanent custody. The court of appeals concluded that, because the mother was never informed about what would happen if the cousin refused to adopt the child, the mother "lacked full knowledge of the essential facts and consequences necessary to execute a voluntary surrender." Id. at 222.
In the instant case, Melissa may be entitled to relief if she can show that she was unaware that the open adoption agreement did not include visitation with Candance's biological sister. However, the entry incorporating the open adoption agreement says nothing about visitation with a biological sister. It plainly states: "Said open adoption shall be limited exclusively to the biological mother of the minor child and the adoptive parents, and shall not provide for the inclusion of any other third parties." This entry was signed by both Melissa and her attorney. Additionally, the transcript of the hearing on this matter is devoid of any reference to visitation with a biological sister and Melissa states on the record that her attorney had explained the agreed entry to her. In conclusion, there is nothing in the record to support Melissa's belated assertions that the open adoption agreement included visitation with Candance's biological sister.
Melissa's sole assignment of error is not well taken.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. ___________________________ DONNA J. CARR
FOR THE COURT
BAIRD, P. J.
QUILLIN, J.
CONCUR
(Quillin, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)