DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Erica and Vincent Yurick, appeal from the order of the Summit County Court of Common Pleas, Probate Division, granting Appellee, Benjamin Goss, relief from judgment. We reverse.
On January 2, 1998, Appellee signed a "Consent to Adopt" form permitting Vincent Yurick to adopt Zachary Vincent Yurick (f.k.a. Zachary Jonothon Goss). A final decree of adoption for Zachary was entered on August 24, 1998. On September 23, 1998, Appellee filed a notice of appeal with this court. On October 30, 1998, Appellee voluntarily dismissed the appeal. Thereafter, Appellee moved the Probate Division of the Summit County Court of Common Pleas for Relief from Judgment pursuant to Civ.R. 60(B) (3). After the submission of a flurry of briefs on the issues by both parties and an oral hearing, the trial court granted Appellee relief pursuant to Civ.R. 60(B) (1). Appellants have timely appealed that order, raising two assignments of error for review.
 ASSIGNMENT OF ERROR I
The trial court abused its discretion by finding that Appellee proved by clear and convincing evidence that his consent was not freely and voluntarily extended.
Appellee failed to meet the burden of proof necessary to invalidate his formal, notarized consent to the adoption of Zachary. Consequently, the trial court abused its discretion by improvidently granting Appellee relief from judgment.
An appellate court reviews a decision on a Civ.R. 60(B) motion under an abuse of discretion standard. Spano BrothersConstr., Inc. v. Leisinger (July 24, 1996), Summit App. No. 17438, unreported at 3, citing Strack v. Pelton (1994), 70 Ohio St.3d 172,174. Abuse of discretion connotes an attitude by the court that is "unreasonable, arbitrary, or unconscionable." Spano Bros.Constr., Inc., supra.
A signed consent agreement constitutes prima facie evidence that the consent to an adoption is valid. In re Brunner (Mar. 11, 1993), Franklin App. No. 92AP-1447, unreported, 1993 Ohio App. LEXIS 1418, at *5. A parent may invalidate consent to an adoption based on fraud, duress or undue influence, and mistake or misunderstanding.
 A. Fraud
Pursuant to statute, consent may be invalidated where it was obtained by fraud. R.C. 3107.16. While R.C. 3107.084 provides for the withdrawal of consent prior to the entry of an interlocutory order or the entry of the final decree of adoption where no interlocutory order has been entered, R.C. 3107.16
governs the invalidation of consent after the entry of either the interlocutory or final order. In re Adoption of Zschach (1996),75 Ohio St.3d 648, 658. R.C. 3107.16(B) provides:
 Subject to the disposition of an appeal, upon the expiration of one year after an adoption decree is issued, the decree cannot be questioned by any person, including the petitioner, in any manner or upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless, * * * in the case of the adoption of a minor by a stepparent, the adoption would not have been granted but for fraud perpetrated by the petitioner or the petitioner's spouse[.]
Under the given circumstances of the proposed step-parent adoption, in order to meet the criteria set forth by the legislature, Appellee would have to prove that Appellants procured his consent through fraud.
Appellee filed his motion for relief from judgment pursuant to Civ.R. 60(B) (3), alleging fraud, misrepresentation, or other misconduct of an adverse party. Appellee specifically alleged in his motion that the adoption decree issued by the trial court was the result of "fraud and misrepresentation." However, the court declined the proffered grounds and instead granted the Appellee's motion on the basis of Civ.R. 60(B) (1), thus premising the relief upon "mistake, inadvertence, surprise or excusable neglect." In fact, nowhere within the order does the trial court find that the consent was the result of fraud. Therefore, we cannot find that Appellee has established fraud by Appellants that would vitiate the validity of his consent.
 B. Duress and Undue Influence
Consent may also be invalidated where the parent establishes by clear and convincing evidence that the consent was garnered through duress or undue influence. In re Adoption of Infant Boy
(1989), 60 Ohio App.3d 80, 81. To determine the validity of consent and how that consent may have been affected by duress or undue influence, courts examine "whether the party affected really had a choice; whether he had his freedom of exercising his will."Tallmadge v. Robinson (1952), 158 Ohio St. 333, 340. The court in Tallmadge further held that
 [i]n determining whether a course of conduct results in duress, the question is not what effect such conduct would have upon an ordinary man but rather the effect upon the particular person toward whom such conduct is directed, and in determining such effect the age, sex, health and mental condition of the person affected, the relationship of the parties and all the surrounding circumstances may be considered.
Id. at paragraph two of the syllabus. While all consent proceedings contain the prospect of either express or implied duress or influence, it is only after reviewing the external circumstances surrounding the consent that it can be determined whether the influence was undue. In re Adoption of Wenger (Sept. 2, 1994), Stark App. Nos. 9405 and 1994-CA-00036, unreported, 1994 Ohio App. LEXIS 4303, at *7.
In light of the factual circumstances underlying Appellee's consent, the consent is valid and not the result of undue influence or duress. Appellee is an adult who is successfully employed and who has a high school diploma. His decision regarding consent was in no way rushed. Although there is testimony that indicates that Appellee's family was not in agreement with his decision, the circumstances surrounding the consent do not appear to have been emotionally charged or overwhelming. Appellee was not financially constrained to give his consent. Finally, any influence exerted would have been by Appellants, Appellee's former spouse and her new husband, and not by a person in a position of authority over Appellee. Courts have consistently held that individuals in significantly more emotional and volatile states were not unduly influenced or coerced even where the individuals exercising the influence held significant roles of power.[1] In fact it has historically only been in extreme circumstances where the courts have permitted the invalidation of consent on the basis of undue influence or duress.[2] Therefore, the circumstances surrounding the consent do not rise to the level necessary to constitute undue influence or duress and the consent may not be invalidated upon these grounds.
 C. Mistake or Misunderstanding
Under certain circumstances, a consent has been deemed to be invalid where the natural parent has shown that their consent was not freely given due to mistake or misunderstanding. In these cases, the natural parent consented to adoption based upon a mistaken belief or misunderstanding which resulted from misleading promises made by an authority figure. See In re Dunn (1995),102 Ohio App.3d 217; In re Brunner, supra.
In Dunn the birth mother voluntarily surrendered her child to the custody of a children services agency with the understanding that a cousin in Kentucky would adopt the child and arrangements would be made to permit the natural mother visitation rights. It was never discussed what would occur should the cousin decide not to go forward with the adoption. The trial court incorporated the side agreements regarding the adoptive parent and the visitation agreement into the approval of the surrender of the child and stated that it could not control the eventual adoption process, but did not conduct an inquiry into the nature of the agreement.Id. at 221. Similarly, in Brunner the natural mother, a young, unwed, go-go dancer, relied upon an affidavit signed by her parents which promised visitation rights following the adoption of the child by her parents. The adoptive parents in Brunner made it clear to the court and to the natural mother that the child would be raised to know the natural mother as his mother and his adoptive parents as his grandparents. Although it was acknowledged at the hearing that the document was not legally enforceable, all parties were clear that they intended to be bound by the promises contained within the affidavit. In both cases, when it came to light that these promises would not be upheld, the courts invalidated the consents as based upon mistake.
Upon our review of the record, it is apparent that Appellee premised his attempt to invalidate his previous consent upon his mistaken belief that visitation would continue with Zachary following the finalization of the adoption. Appellee argues that this mistaken belief vitiates his willingness to consent to the adoption with the resulting consequences. Although Appellee may have lacked knowledge of the full impact of his decision, this factor does not rise to the level necessary to invalidate his consent. Even assuming that Appellants made representations that nothing would change between Appellee and Zachary following the adoption, testimony was given by Appellee's family members and Appellee's former fiancé that they repeatedly informed Appellee that they did not believe he would be able to maintain visitation rights following the adoption. In light of the strained relations between the two parties following their divorce, it is unlikely that either would or should reasonably rely solely upon the other's representations. Upon review of the surrounding circumstances, Appellee has failed to meet the requirements necessary to have his consent invalidated.
It appears as if Appellee has had a change of heart since the consent was originally given. Testimony was received that indicated that a number of changes had occurred in the circumstances Appellee faced between the time the consent was originally signed and the time the adoption was finalized. However, "the mere fact that the natural [parent] has had a change of heart about an adoption is insufficient grounds to revoke consent to the adoption." In re Adoption of Baby Boy,60 Ohio App.3d at 86. Therefore, Appellee is unable at this time to attempt to withhold the consent previously given.
 D. Conclusion
Because the record indicates that the trial court applied the incorrect standard regarding mistake, and because Appellee did not demonstrate fraud, duress or undue influence, the trial court abused its discretion in granting relief from the judgment. Accordingly, the decision of the trial court is reversed, and the judgment in favor of Appellants is reinstated.
 ASSIGNMENT OF ERROR II
The trial court abused its discretion by failing to take into account the best interests of the child, Zachary Vincent Yurick.
Pursuant to App.R. 12(A) (1) (c), this court's disposition of the first assignment of error renders the Appellants' second assignment of error moot and accordingly, it will not be addressed.
Appellant's first assignment of error is sustained. The judgment of the trial court is reversed, and the order permitting the adoption is reinstated.
Judgment Reversed
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 LYNN C. SLABY FOR THE COURT WHITMORE, J.
 CONCURS
[1] See In re Adoption of Zschach, 75 Ohio St.3d 648 (Adoptive parent had previously agreed to the interaction of the natural mother in the child's upbringing in the midst of concerns regarding the natural father's ability to obtain custody of the child); Morrow v. Family Community Serv. of Catholic Charities,Inc. (1986), 28 Ohio St.3d 247 (The parents, two college students, argued that they were strongly encouraged by the court and the adoption agency to consent to the adoption); In re Adoption ofInfant Boy, supra (Seventeen-year-old high school student became pregnant by sixteen-year-old boyfriend and her father pressured her into giving the child up for adoption by refusing to assist the natural mother in any way.); In re Adoption of Wenger, supra
(Seventeen-year-old was convinced to give the child to her in-laws to adopt, believing that she would remain a part of their family and would "co-mother" the child. The father of the child was away in the military. The natural mother had minimal parental support and was financially dependent upon her in-laws.).
[2] See In re Hua (1980), 62 Ohio St.2d 227 (Vietnamese mother's consent was deemed invalid where she was pressured into giving her child up for adoption by the agency reinforcing and encouraging fears that her child would be killed due to his mixed parentage.); Marich v. Knox Cty Dept. of Human Serv. (1989),45 Ohio St.3d 163 (Fifteen-year-old natural mother pressured by agency into giving child up for adoption through repeated unsolicited meetings at which the natural mother was not accompanied by a parent or legal representative. The first of these meetings took place within hours of the baby's birth.).