OPINION
{¶ 1} This appeal arises from a judgment entered by the Portage County Court of Common Pleas, Juvenile Division, wherein the court vacated an order approving appellee, Lisa Plumley's permanent surrender of parental rights regarding Ashley Plumley.
 {¶ 2} A review of the record reveals that Ashley has been in the custody of appellant, the Portage County Department of Job and Family Services ("PCDJFS"), since March 26, 2001, when she was fourteen months of age. Subsequent to being removed from the home, Ashley's father was incarcerated. Her mother, Lisa, gave birth to twin boys on September 19, 2002. The twins' father was Lisa's boyfriend, who was subsequently also incarcerated.
 {¶ 3} On February 4, 2003, PCDJFS moved for permanent custody of Ashley. A permanent custody hearing was set for April 11, 2003. Lisa's counsel moved to withdraw as counsel one week prior to the hearing, asserting that Lisa informed him that she no longer desired his representation in the matter.
 {¶ 4} On the morning of April 11, 2003, prior to the hearing, Lisa executed a document permanently surrendering her parental rights to Ashley in accordance with R.C. 5103.15. The parties then proceeded to the courtroom for the hearing. At that time, the court was notified that Lisa wished to permanently surrender her parental rights. The court inquired whether Lisa still wished to be represented by her current counsel. Lisa responded in the affirmative, and counsel's motion to withdraw was denied.
 {¶ 5} The court conducted a lengthy colloquy with Lisa regarding her decision to permanently surrender her parental rights. This included reciting the language on the surrender document en toto, and questioning Lisa extensively as to whether she knew the precise ramifications of the surrender. Lisa responded that she understood the surrender and wanted to proceed with it. When asked whether she had any questions or needed any further explanation of her rights, she responded in the negative. The court approved the agreement to permanently surrender Ashley to PCDJFS.
 {¶ 6} The court then proceeded to a permanent custody hearing regarding Ashley's father, John Guy. In a judgment entry dated April 29, 2003, the trial court granted PCDJFS's motion for permanent custody. Guy filed an appeal with this court on May 29, 2003, which was subsequently dismissed for failure to prosecute.
 {¶ 7} Lisa filed a motion for a new trial on May 30, 2003. The matter was set for a hearing to be held June 23, 2003. Lisa testified at the hearing. The trial court requested briefs on the merits of Lisa's motion. On September 5, 2003, a second hearing was held on the matter. Lisa also testified at this hearing. In a judgment entry dated September 26, 2003, the trial court vacated its prior approval of the April 11, 2003 permanent surrender, finding that Lisa had not "knowingly, voluntarily, and intelligently surrendered her parental rights[.]"
 {¶ 8} PCDJFS filed this appeal, citing a single assignment of error:
 {¶ 9} "The trial court lacked the authority to vacate the appellee's voluntary agreement to permanently surrender her child when the agreement was made pursuant to R.C. 5103.15 without fraud or misrepresentation."
 {¶ 10} PCDJFS asserts that Lisa's agreement to permanently surrender her daughter was properly executed and approved, and the trial court abused its discretion in vacating its prior order, accepting the permanent surrender, when Lisa failed to present evidence demonstrating that the permanent surrender was the result of fraud or misrepresentation.
 {¶ 11} The trial court noted that it would treat the motion for a new trial as a Civ.R. 60(B) motion. Civ.R. 60(B) provides, in part:
 {¶ 12} "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; * * * or (5) any other reason justifying relief from the judgment."
 {¶ 13} To prevail on a Civ.R. 60(B) motion, "the movant must demonstrate that: (1) [she] has a meritorious defense or claim to present if relief is granted; (2) [she] is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time."[1] An appellate court may not disturb the trial court's ruling on a Civ.R. 60(B) motion absent an abuse of discretion.[2] An abuse of discretion is more than an error of law or judgment, it implies that the judgment was unreasonable, arbitrary, or unconscionable.[3]
 {¶ 14} Pursuant to R.C. 5103.15, when a parent makes a decision to permanently surrender a child into the permanent custody of a children services agency, court approval of the agreement is required.[4] The Supreme Court of Ohio noted that the role of the juvenile court is "to insure that the surrender is made by the parent voluntarily, with full knowledge of the legal import of the relinquishment of parental rights accomplished thereby; and to insure that the child welfare agency does not enter into improvident contracts."[5]
 {¶ 15} Thus, in order for the court to approve of a proposed permanent surrender of a child, it must conclude that the parent has entered into the agreement voluntarily, with a complete awareness of the ramifications of the permanent surrender.
 {¶ 16} The Third Appellate District addressed the issue of whether a permanent surrender was rendered voluntarily in In reDunn.[6] In that case, the mother executed a permanent surrender of her child, but later filed a Civ.R. 60(B) motion, asserting that the permanent surrender had not been voluntary. The mother contended that she had agreed to the permanent surrender based solely on the contention that her cousin would adopt the baby, and she could retain visitation rights. The cousin subsequently refused to adopt the child.
 {¶ 17} The Third Appellate District ruled that, although the trial court fully explained the permanent surrender process at the hearing, and inquired as to whether the parent knew that her rights as a parent would be severed, the record indicated that the parent had agreed to the permanent surrender based on assertions by the child welfare agency that the child would be adopted by a cousin, with an opportunity for visitation. Although the court concluded that no "deliberate misrepresentation or fraud" occurred, the parent "lacked full knowledge of the essential facts and consequences necessary to execute a voluntary surrender."[7]
 {¶ 18} In the instant case, the record reveals that, prior to the hearing, Lisa wrote a letter to her counsel, Attorney Herbaugh, informing him that she no longer wanted his representation. Attorney Herbaugh then filed a motion to withdraw as her counsel. However, when asked at the hearing whether she wanted Attorney Herbaugh to continue to represent her, Lisa responded in the affirmative, and the motion was denied.
 {¶ 19} On the morning of the permanent custody hearing, the parties properly executed the written permanent surrender form in compliance with the statute. Moreover, at the hearing, the trial court properly addressed Lisa and proceeded to read the agreement into the record in its entirety. The court then inquired as to whether Lisa understood the legal consequences and that, by signing the document, all her rights as a parent to the child would end, including all rights to visitation, communication, support, religious affiliation, and the right to consent to adoption. Lisa responded in the affirmative. The court then asked if she had any further questions or concerns, to which she responded in the negative. The court subsequently approved the surrender agreement.
 {¶ 20} At the Civ.R. 60(B) hearing, Lisa testified that she was informed by her counsel, prior to executing the surrender, that she should permanently surrender Ashley, or risk having her twins, already in temporary custody, and the child, with which she was then pregnant, removed from her custody permanently. She testified that her attorney said if she did not enter into the permanent surrender, "they would use that in court against me." When asked at the hearing what she thought that meant, she said, "[w]ell, he said if I don't sign the papers for the — surrender papers, the boys would be put up for adoption and this one would be put up for adoption, I could have no more kids for the rest of my life. So I had no — I had no choice."
 {¶ 21} When asked why she did not mention this at the permanent custody hearing, Lisa responded, "when I signed the papers [Attorney Herbaugh] said he already spoke to the judge, decisions were made, and so that is why I didn't refuse anything. I — I just thought it was done and over with."
 {¶ 22} The court ultimately concluded:
 {¶ 23} "[T]he Court cannot find, at this time, that Lisa M. Plumley knowingly, voluntarily, and intelligently surrendered her parental rights in regard to her daughter, Ashley Plumley. The Court finds that the difficult relationship between Ms. Plumley and her legal counsel contributed to their inability to communicate with one another and affected Ms. Plumley's decision in the permanent surrender before this Court."
 {¶ 24} PCDJFS contends that, because there was no evidence presented of fraud or misrepresentation, the trial court abused its discretion in vacating the permanent surrender. We disagree.
 {¶ 25} We agree with the analysis of the Third District. The act of permanently surrendering parental rights pursuant to R.C.5103.15 completely severs that parent from her child. Thus, the parent's decision is one that must be made voluntarily, knowingly, and with full knowledge of the consequences. Even in the absence of fraud or misrepresentation, a permanent surrender of parental rights is not proper when a parent lacks complete knowledge of the essential facts and legal consequences of the surrender.
 {¶ 26} PCDJFS's assignment of error is without merit, and the judgment of the trial court is affirmed.
Judgment affirmed.
Ford, P.J., concurs.
Grendell, J., dissents.
[1] GTE Automatic Electric v. ARC Industries (1976),47 Ohio St.2d 146, paragraph two of the syllabus.
[2] Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77.
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[4] See R.C. 5103.15(B).
[5] In re Miller (1980), 61 Ohio St.2d 184, 191.
[6] In re Dunn (1995), 102 Ohio App.3d 217.
[7] Id. at 222.