OPINION
{¶ 1} Appellant, Shannon Beth Marrone, appeals the August 5, 2004 judgment of the Probate Division of the Portage County Court of Common Pleas, in which the trial court vacated the previous adoption decrees due to lack of consent forms of the natural parent, appellee, Julianne Rosemarie Sickafoose.
 {¶ 2} Appellee is the biological mother of Justin Sean Hockman ("Justin"), who was born on October 28, 1989, and Dara-Lynn Marie Hockman ("Dara-Lynn"), whose date of birth was April 27, 1991. Sean Hockman ("Sean") is the biological father of both children. Sean and appellee were married in 1992, and were divorced on April 23, 1996, in Geauga County. Appellee was granted custody of the children. Subsequently, both parties agreed that Sean should have custody, care and control of the minor children.[1] A motion was filed with the Geauga County Court of Common Pleas to change custody, and in September 1996, Sean was designated as the children's residential parent, and appellee was given standard visitation.
 {¶ 3} On May 2, 1998, Sean married appellant. Appellant assisted in caring for Justin and Dara-Lynn. On February 22, 2002, appellant filed petitions with the trial court for the adoption of both children. With the petitions, she filed Sean's consents. On March 8, 2002, the "Consent to Adoption" forms executed in front of a notary by appellee on March 7, 2002, were filed with the trial court in both of the children's cases.
 {¶ 4} A hearing was held on August 26, 2002. No notice of the hearing was given to appellee as she had waived notice of the proceeding in writing when she signed the consents to the adoptions. In a decision dated August 26, 2002, the magistrate determined that the adoptions were in the best interest of the children and that appellant's petitions for adoption should be granted. Justin's consent was necessary because he was more than twelve years of age. After the court advised him of the legal effect the adoption would have on his relationship with his natural mother, he consented. The trial court adopted the magistrate's decision on September 3, 2002, and issued a final decree of adoption.
 {¶ 5} On November 26, 2002, appellee filed a letter with the trial court requesting that it dismiss appellant's motions for adoption. She indicated that she had not received any notice of the hearing. Thereafter, on January 6, 2003, appellee filed a motion to withdraw her consents to the adoptions of Justin and Dara-Lynn as they were not fully, knowingly, and voluntarily given.
 {¶ 6} On July 14, 2003, September 22, 2003, and November 17, 2003, appellee's motion for relief was heard.[2] In a decision dated February 18, 2004, the magistrate determined that appellee's consents were not freely and voluntarily executed with full knowledge and understanding. Thus, the magistrate decided that the previous decrees of adoption should be vacated. On that same date, the trial court adopted the magistrate's decision. Appellant filed objections to the magistrate's decision on March 3, 2004. A hearing on the objections was held on June 23, 2004.[3]
 {¶ 7} In an entry dated August 5, 2004, the trial court ordered that the previous decrees of adoption be vacated due to the lack of consent forms of appellee in essence indicating that the forms in question were not freely and voluntarily executed. It is from that entry appellant filed the instant appeal and assigns the following as error:
 {¶ 8} "[1.] The trial court erred in not dismissing [the] birth mother's [m]otion to [w]ithdraw [c]onsent since it was not timely filed pursuant to R.C. 3107.084.
 {¶ 9} "[2.] The trial court erred in its interpretation of [R.C.] 3107.081(E) by requiring that [the] birth mother be provided with a time-stamped copy of her signed consent when no such requirement exists in the statute.
 {¶ 10} "[3.] The trial court erred when it found that [the] birth mother's consent was not freely and voluntarily given.
 {¶ 11} "[4.] The trial court erred when it considered health issues (both physical and mental) when assessing whether the birth mother's consent was voluntary."
 {¶ 12} For her first assignment of error, appellant alleges that the trial court erred by not dismissing appellee's motion to withdraw consent because it was not timely filed pursuant to R.C.3107.084.
 {¶ 13} R.C. 3107.084(B) governs the attempted withdrawal of a valid consent and provides that: "[a] consent to adoption may be withdrawn prior to the entry of an interlocutory order or prior to the entry of a final decree of adoption when no interlocutory order has been entered if the court finds after hearing that the withdrawal is in the best interest of the person to be adopted and the court by order authorizes the withdrawal of consent. Notice of the hearing shall be given to the petitioner, the person seeking the withdrawal of consent, and the agency placing the minor for adoption."
 {¶ 14} This statute has to be read in pari materia with R.C.3107.16(B), which allows up to one year for an individual to attack the validity of a written consent. Thus, since all of the pleadings were filed well within the one year time limit contained in R.C. 3107.16, the trial court did not err by not dismissing appellee's motion to withdraw consent for untimeliness. Appellant's first assignment of error is without merit.
 {¶ 15} Appellant's third and fourth assignments of error are interrelated and will be addressed in a consolidated manner. Under the third assignment of error, appellant claims that the trial court erred when it determined that appellee's consent was not freely and voluntarily given. In the fourth assignment of error, appellant contends that the trial court erred in considering appellee's physical and mental health issues when assessing whether her consents were voluntary.
 {¶ 16} R.C. 3107.084(B) applies to a parent who changes his or her mind after having consented to adoption. The mere fact that the natural mother has had a change of heart about the adoption is insufficient to revoke consent, and that giving effect to a mere change of heart would be contrary to public policy. See, e.g., In re Adoption of Infant Boy (1989),60 Ohio App.3d 80, 86; In re Adoption of Infant Girl Banda (1988),53 Ohio App.3d 104, 116, fn. 11.
 {¶ 17} In the instant matter, the trial court treated appellee's motion to withdraw consent as a hearing and argument to attack the validity of her consents. A valid consent to an adoption is one that has been freely, knowingly and voluntarily given with a full understanding of the adoption process and the consequences of one's actions. In re Adoption of Jimenez
(1999), 136 Ohio App.3d 223, 227. The consent must "be of one's own volition and with full knowledge of the essential facts, and it `is generally wellestablished that fraud, duress, undue influence, * * * or the like will justify a court in finding that consent was not freely and voluntarily executed.'" Id., quotingBanda, 53 Ohio App.3d at 108. Further, a valid consent is irrevocable and cannot be withdrawn unless, after a hearing, the court finds that the withdrawal is in the best interest of the child. R.C. 3107.084(B); In re Adoption of Zschach (1996),75 Ohio St.3d 648. Importantly, the fact that a biological parent has had a change of heart is insufficient to revoke consent.Jimenez, supra, at 227.
 {¶ 18} The conditions for court acceptance of parental consent to adoption are set forth in R.C. 3107.081. There is a difference in the statute for a mother's consent to adoption depending on whether the mother is a stepparent or not. If the petitioner is not a stepparent, the mother is required to appear personally before the court. However, if the petitioner is a stepparent, the only requirement is that the parent who is not married to the stepparent may consent to the minor's adoption without appearing before the court if the parent executed the consents in the presence of a person authorized to take acknowledgments.
 {¶ 19} A signed consent agreement constitutes prima facie evidence that the consent to an adoption is valid. In reBrunner (Mar. 11, 1993), 10th Dist. No. 92AP-1447, 1993 WL 69471, at 2. A parent may invalidate consent to an adoption based on fraud, duress or undue influence, and mistake or misunderstanding. Morrow v. Family Community Serv. of CatholicCharities, Inc. (1986), 28 Ohio St.3d 247, 251. Once a natural mother has entered consent under these circumstances to an adoption, she has the burden to establish fraud, duress, or undue influence by clear and convincing evidence. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368.
 {¶ 20} Under the statute, a consent form may be invalidated where it was obtained by fraud. R.C. 3107.16. While R.C. 3107.084
provides for the withdrawal of consent prior to the entry of an interlocutory order or the entry of the final decree of adoption where no interlocutory order has been entered, R.C. 3107.16
governs the invalidation of consent after the entry of either the interlocutory or final order. Zschach, 75 Ohio St.3d at 658. R.C. 3107.16(B) provides:
 {¶ 21} "Subject to the disposition of an appeal, upon the expiration of one year after an adoption decree is issued, the decree cannot be questioned by any person, including the petitioner, in any manner or upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless, * * * in the case of the adoption of a minor by a stepparent, the adoption would not have been granted but for fraud perpetrated by the petitioner or the petitioner's spouse[.]"
 {¶ 22} Under the given circumstances of the proposed stepparent adoption, to meet the criteria set forth by the legislature, appellee would have to prove that appellant procured her consents through fraud.
 {¶ 23} Appellee filed her motion to withdraw the consents which the trial court treated as requests for relief or an attack on the validity of her consents. Appellee specifically alleged in her motion that her consents were not knowingly, intelligently, and voluntarily given with the full understanding of the adoption process and that she did not understand the consequences of signing the consent forms. The trial court determined that appellee signed the consent forms, but there was "no credible evidence that she had knowledge as to whether these [c]onsent forms were filed with the [c]ourt and that an adoption proceeding was actually pending." However, nowhere within the order does the trial court find that the consents were the result of fraud. Therefore, appellee has not established fraud by appellant that would vitiate the validity of her consents.
 {¶ 24} Consent may also be invalidated where the parent establishes by clear and convincing evidence that the consent was garnered through duress or undue influence. Infant Boy,60 Ohio App.3d at 81. To determine the validity of consent and how that consent may have been affected by duress or undue influence, courts examine "whether the party affected really had a choice; whether he had his freedom of exercising his will." Tallmadge v.Robinson (1952), 158 Ohio St. 333, 340. The Tallmadge court held that: "[i]n determining whether a course of conduct results in duress, the question is not what effect such conduct would have upon an ordinary man but rather the effect upon the particular person toward whom such conduct is directed, and in determining such effect the age, sex, health and mental condition of the person affected, the relationship of the parties and all the surrounding circumstances may be considered." Id. at paragraph two of the syllabus.
 {¶ 25} While all consent proceedings contain the prospect of either express or implied duress or influence, it is only after reviewing the external circumstances surrounding the consent that it can be determined whether the influence was undue. In reAdoption of Wenger (Sept. 2, 1994), 5th Dist. Nos. 9405 and 1994-CA-00036, 1994 WL 530819, at 3.
 {¶ 26} In light of the factual circumstances underlying appellee's consents, it is our position that the consents were valid and were not the result of undue influence or duress. When appellee executed the consents, she was an adult, who had a high school diploma. It does not appear as though her consents were rushed in any way. Although she has a history of health problems, was involved in a divorce from an abusive spouse, and her emotional health appeared fragile, the circumstances surrounding her consents do not appear to have been emotionally charged or overwhelming. There was also no evidence presented that she was not alert or unaware of what she was signing.
 {¶ 27} Further, any influence exerted would have been by appellant or Sean and not by anyone in a position of authority over appellee, and there is no evidence to suggest that anyone acted in a way that compromised the exercise of appellee's free will. Courts have consistently held that individuals in significantly more emotional and volatile states than appellee were not unduly influenced or coerced even where the individuals exercising the influence held significant roles of power.[4] In fact, it has only been in extreme circumstances where the courts have permitted the invalidation of consent on the basis of undue influence or duress.[5] In the instant matter, it is our view that the circumstances surrounding appellee's consents do not rise to the level necessary to constitute undue influence or duress. Thus, the consents may not be invalidated upon these grounds.
 {¶ 28} In addition, under certain circumstances, a consent form has been invalidated where the natural parent has shown that their consent was not freely given due to mistake or misunderstanding. Further, the burden of proof is on appellee to show by clear and convincing evidence that her written consents to the adoptions were invalid because they were not voluntary. See Infant Boy, supra. In such cases, the natural parent consented to adoption based upon a mistaken belief or misunderstanding which resulted from misleading promises made by an authority figure. See In re Dunn (1995),102 Ohio App.3d 217; In re Adoption of Yurick (Dec. 15, 1999), 9th Dist. No. 19520, 1999 WL 1215310, at 3.
 {¶ 29} In Dunn, the birth mother voluntarily surrendered her child to the custody of a children services agency with the understanding that a cousin would adopt the child and that she would be allowed visitation rights. It was never discussed what would occur if the cousin decided not to proceed with the adoption. The trial court incorporated the side agreements regarding the adoptive parent and the visitation agreement into the approval of the surrender of the child and stated that it could not control the eventual adoption process, but did not conduct an inquiry into the nature of the agreement. Id. at 221.
 {¶ 30} Similarly, in Brunner, supra, the natural mother, a young, unwed, go-go dancer, relied upon an affidavit signed by her parents which promised visitation rights following the adoption by her parents. The adoptive parents made it clear to the court and to the natural mother that the child would be raised to know the natural mother as his mother and his adoptive parents as his grandparents. Although it was acknowledged at the hearing that the document was not legally enforceable, all parties were clear that they intended to be bound by the promises contained within the affidavit.
 {¶ 31} In Dunn and Brunner, when it came to light that these promises would not be upheld, the courts invalidated the consents based upon mistake.
 {¶ 32} Upon our review of the record, it is apparent that appellee premised her attempt to invalidate her previous consents upon her mistaken belief that she was signing consent forms for trusts that were being set up by appellant's father for the benefit of the children. Appellee argues that this mistaken belief vitiates her willingness to consent to the adoptions with the resulting consequences. Although appellee may have lacked knowledge of the full impact of her decision, this factor does not rise to the level necessary to invalidate her consents. Even assuming that appellant made representations that nothing would change between appellee and Justin and Dara-Lynn following the adoption, there was no testimony presented that appellee would be able to maintain visitation rights following the adoption. Hence, upon reviewing the surrounding circumstances, appellee has failed to meet the requirements necessary to have her consents invalidated.
 {¶ 33} It further appears as if appellee had a change of heart after the consents were originally given. The record reveals that a number of changes had occurred in the circumstances appellee faced between the time the consents were originally signed and the time the adoption was finalized. However, as already stated "the mere fact that the natural [parent] has had a change of heart about an adoption is insufficient grounds to revoke consent to the adoption." InfantBoy, 60 Ohio App.3d at 86. Hence, appellee is unable at this time to attempt to invalidate the consents previously given.
 {¶ 34} Accordingly, because the record indicates that the trial court applied the incorrect standard regarding mistake, and because she was unable to demonstrate fraud, duress or undue influence, the trial court abused its discretion in granting relief from the judgment. Appellant's third and fourth assignments of error have merit.
 {¶ 35} Under appellant's second assignment of error, she alleges that the trial court erred in its interpretation of R.C.3107.081(E) by requiring that appellee be provided with a time-stamped copy of her signed consent when no such requirement exists in the statute. We agree. There is nothing in the statute that requires any timestamped copy of a signed consent be provided to the birth mother in a situation where a stepparent is adopting. Furthermore, the consent forms were filed with the trial court on March 8, 2002, and the final decree of adoption was not entered until September 3, 2002. Therefore, appellee had nearly six months to wage an objection. Additionally, there was nothing in appellee's testimony that indicated that the receipt of a timestamped copy of the consent forms would have changed her understanding of the documents or caused her to examine them more closely. Hence, it is our view that the trial court erred in indicating that such a requirement be obtained here. Appellant's second assignment of error is sustained.
 {¶ 36} For the foregoing reasons, appellant's first assignment of error is not welltaken, and appellant's second, third, and fourth assignments of error are well-taken. The judgment of the Portage County Court of Common Pleas, Probate Division, is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
Christley, J., Rice, J., concur.
[1] In 1996, appellee agreed that Sean should have custody of Justin and Dara-Lynn because of her second husband's abusive behavior.
[2] Transcripts from these hearings are contained in the record.
[3] There is no transcript in the record from this hearing as the tape from the hearing malfunctioned. However, there is an App.R. 9(C) statement in the record.
[4] See Zschach, supra, (Adoptive parent previously agreed to the interaction of the natural mother in the child's upbringing in the midst of concerns regarding the natural father's ability to obtain custody of the child); Morrow, supra, (The parents, two college students, argued that they were strongly encouraged by the court and adoption agency to consent to the adoption);Infant Boy, supra, (Seventeen-year-old high school student became pregnant by her sixteen-year-old boyfriend and her father pressured her into giving the child up for adoption by refusing to assist her in any way); and Wenger, supra, (Seventeen-year-old was convinced to give the child to her in-laws to adopt, believing that she would remain a part of their family and would "co-mother" the child. The father of the child was away in the military, and the natural mother had minimal parental support and was financially dependent upon her in-laws).
[5] See In re Hua (1980), 62 Ohio St.2d 227, (Vietnamese mother's consent was deemed invalid where she was pressured into giving her child up for adoption by the agency reinforcing and encouraging fears that her child would be killed due to his mixed parentage.); and Marich v. Knox Cty. Dept. of Human Serv.
(1989), 45 Ohio St.3d 163, (Fifteen-year-old natural mother pressured by agency into giving child up for adoption through repeated unsolicited meetings at which the natural mother was not accompanied by a parent or legal representative. The first of these meetings took place within hours of the baby's birth.).