MANNING, APPELLANT, *v.* MIAMI COUNTY CHILDREN'S SERVICES BOARD
ET AL., APPELLEES.

[Cite as Manning *v.* Miami Cty. Children's Services Bd.
(1985), 18 Ohio St. 3d 211.]

(Nos. 84-66 and 84-136—Decided July 17, 1985.)

*Hugh R. Tankersley,* for appellant.

*Jeffrey M. Welbaum,* prosecuting attorney, and *Carla M. Suerdieck,* for appellee.

DOUGLAS, J. "Whoever is * * * entitled to the custody of another, of which custody such person is unlawfully deprived, may prosecute a writ of

habeas corpus * * *." R.C. 2725.01. Appellant claims that he is entitled to the custody of his natural children and that he is being unlawfully deprived of their custody by virtue of the fact that he did not *voluntarily* enter into the April 29, 1982 permanent surrender of custody agreements. Thus, the first issue in this case is whether appellant voluntarily entered into those agreements.

## I

R.C. 5153.16(B) is the authority relied upon by Children's Services to enter into the April 29 surrender agreements with appellant and Mary Manning. A separate set of agreements was executed with regard to each child. The agreements stated:

"The undersigned Gary Manning and Mary Manning * * * the natural parents of Jeffrey Lee Manning [and Chad Manning] * * * desires [*sic*] that said [children] * * * be received by Miami County Children's Services Board [said parents] being unable to care for said [children] * * * for the following reasons: Parents unable to care for [said children] * * * requests [*sic*] adoptive placement * * *[.] [The parents] hereby surrender and entrust to the managing officers of said * * * board * * * the permanent guardianship of said [children] * * *."

The Mannings signed these documents and then executed affidavits (one with regard to each child) which read:

"Gary Manning and Mary Manning being duly sworn, says [*sic*] they have voluntarily signed the foregoing permanent surrender[s], the same having been carefully read and explained * * *."

R.C. 5153.16(B) states, "* * * the permanent custody of a child shall not be transferred by a parent to the board * * * without the consent of the juvenile court." In *In re Miller* (1980), 61 Ohio St. 2d 184, 191 [15 O.O.3d 287], Justice Sweeney explained the court's function in consent proceedings:

"* * * It is the Juvenile Court's function in consenting to a permanent surrender to insure that the surrender is made by the parent voluntarily, with full knowledge of the legal import of the relinquishment of parental rights accomplished thereby; and to insure that the child welfare agency does not enter into improvident contracts. * * *"

In the case at bar, the juvenile court approved the surrender of custody on May 13, 1982. In addition to considering the language of the surrender agreements and the affidavits quoted above, the court was also able to review additional affidavits that were executed by appellant and a representative of Children's Services.

Appellant's additional affidavits (executed with regard to each child) read:

"I, the undersigned, being first duly sworn, depose and say that I am the natural father * * * of * * * [children] * * *; that my legal rights have been fully and completely explained to me prior to my signing of a perma-

nent surrender of said [children] * * * and after the birth of said [children] * * *; that I understand the legal rights which I voluntarily surrender by the completion of a permanent surrender are my right to choose to keep the [children] * * *, my right to contact, see, visit or have the custody of said [children] * * * as well as my right to know when, where and with whom the [children] * * * will be placed and my right to receive any service or support from the [children] * * * and that I further lose my responsibility to provide care or support to the [children] * * *. I voluntarily and without threat, coercion, or duress being used against me, relinquish all of said rights."

At the same time that appellant executed these affidavits, Michael Bogrees, a representative from Children's Services, executed two affidavits, one with regard to each child. They read:

"I, the undersigned, being first duly sworn, depose and say that I am an employee with the Miami County Children's Services Board and that I fully and completely explained to Gary and Mary Manning, the natural father/mother of [Jeffrey and Chad] * * * his/or her legal rights prior to the execution of a permanent surrender * * *. That the legal rights which were explained to him/her, which he/she would voluntarily surrender by signing a permanent surrender, were his/her right to choose to keep [the children] * * *, his/her right to contact, see, visit or have the custody of said [children] * * * as well as the right to know when, where and with whom the [children] * * * will be placed and the right to receive any service or support from the [children] * * * and he/she loses the responsibility to provide care or support to the [children] * * *."

On September 30, 1983, a referee's hearing was held in the court of appeals. Appellant testified that he did not understand what he was doing when he signed the surrender agreements because "I was under threats by her [Mary Manning]." Appellant's testimony was effectively rebutted by Larry Ganger, the Administrator of the Miami County Children's Services Board. He explained the procedure that was used to advise appellant of his legal rights. He also stated that he saw the Mannings on the day they signed the surrender agreements and that "* * * both of them seemed to know what they were doing that day and I think both of them were much calmer than I'd seen them at several previous occasions. * * * I remember them saying that they were having some problems with various family members and they'd like to get together themselves to stabilize their marriage and maybe even move out of the area for a time to get their lives together. And they thought it was in the best interest of the children to surrender them to the agency. * * * I would say on that particular day Mrs. Manning may have been a little more reluctant to sign than he [appellant] was. But he assured her that what they were doing was the right thing and that they should go ahead and sign the [surrender] documents."

At the conclusion of the hearing, the referee (court of appeals Judge R.K. Wilson) issued a report that found "Gary Manning's consent to the

permanent surrender of his sons, Jeffrey and Chad, was voluntary [*sic*], knowingly and freely given." The court of appeals, relying on the referee's findings, denied appellant's writ for habeas corpus.

The finding that appellant's consent to the permanent surrender of his children was voluntary is supported by competent, credible evidence. It is therefore affirmed. *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

## II

The second issue in this case is whether the court of appeals erred by denying appellant's motion to amend his petition, pursuant to Civ. R. 19, to join as parties "all members of the Manning family related by affinity of blood and kinship with the infants * * *."

The Rules of Civil Procedure govern original actions filed in the Court of Appeals for Miami County. See Rule 8(A) of the Local Rules of the Second Appellate District. Civ. R. 19 deals with joinder of persons needed for just adjudication. It states, in relevant part:

"A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties * * *."

The only proper parties in this case are the petitioner and the respondents. The class of petitioners is limited by R.C. 2725.01 which deals with persons entitled to a writ of habeas corpus. It states that "[w]hoever is * * * entitled to the custody of another, of which custody such person is unlawfully deprived, may prosecute a writ of habeas corpus * * *." Appellant implicitly admits that the parties he seeks to join do not fall into the permitted class of petitioners as he claims *he* is entitled to the custody of the children. Thus, the parties appellant seeks to join cannot be joined as petitioners.

Accordingly, we find that complete relief has been accorded appellant and the court of appeals committed no error by refusing to allow appellant to join various and sundry family members as parties to this lawsuit. We hold that where the issuance of a writ of habeas corpus is the sole relief sought, in an action seeking a determination of the right to custody of a child or children, the only proper parties as petitioners to the action are those who are entitled to the custody of the child or children.

For the foregoing reasons, the judgments of the court of appeals are affirmed in case Nos. 84-66 and 84-136.

*Judgments affirmed.*

LOCHER, HOLMES, C. BROWN and WRIGHT, JJ., concur.

C. BROWN, J., concurs separately.

CELEBREZZE, C.J., and DAHLING, J., concur in judgment only.

DAHLING, J., of the Eleventh Appellate District, sitting for SWEENEY, J.

CLIFFORD F. BROWN, J., concurring. With reference to the motion of appellant to amend the petition to join as parties "all members of the Manning family related by affinity of blood and kinship with the infants," this court has clearly stated that such members do not fall within the category of persons who should be made petitioners in the case. However, the language of Civ. R. 19(A) is broad enough to deal with joinder of persons as respondents (defendants) as well as petitioners (plaintiffs). The members of the Manning family appellant seeks to join as parties are not joinable as respondents under Civ. R. 19(A) because (1) complete relief can be accorded among those already parties without their joinder, and (2) these Manning family members do not have an interest relating to the subject of the action within the meaning of Civ. R. 19(A)(2) and (3).[1]

Generally the only proper respondent in a habeas corpus action is the person who is illegally depriving another of his liberty within the meaning of R.C. 2725.04, which provides in pertinent part:

"Application for the writ of habeas corpus * * * shall specify:

"* * *

"(B) The officer, or name of the person by whom the prisoner is so confined or restrained; * * *"

Members of the Manning family related by affinity of blood and kinship with the infants, who are sought to be joined as parties, do not fit this statutory specification for respondents in a habeas corpus action.

I concur in the syllabus and judgment.

---

[1] The relevant portions of Civ. R. 19(A) pertaining to appellant's motion to amend to join parties is as follows:

"Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. * * * If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. * * *"