Marich, Appellee, *v.* Knox County Department of
Human Services/Children Services Unit et al., Appellants.

[Cite as Marich *v.* Knox Cty. Dept. of Human Serv. (1989), 45 Ohio St. 3d 163.]

(No. 88-1899—Submitted May 30, 1989—Decided August 23, 1989.)

*Morrow, Gordon & Byrd, James R. Cooper* and *John T. Wallace,* for appellee.

*Michael D. Schlemmer* and *James A. Giles,* for appellants.

DOUGLAS, J. R.C. 2725.01 provides that "[w]hoever is * * * entitled to the custody of another, of which such custody such person is unlawfully deprived, may prosecute a writ of habeas corpus * * *."

Appellee alleges that she was unlawfully deprived of her daughter when she signed a permanent surrender agreement in response to undue pressure. Appellee filed a petition

for a writ of habeas corpus in which she seeks the return of her child.

In other permanent surrender cases, such as *Morrow* v. *Family & Community Serv. of Catholic Charities, Inc.* (1986), 28 Ohio St. 3d 247, 28 OBR 327, 504 N.E. 2d 2, and *Manning* v. *Miami Cty. Children's Services Bd.* (1985), 18 Ohio St. 3d 211, 18 OBR 273, 480 N.E. 2d 770, the parents initiated habeas corpus actions. The parents claimed to have involuntarily signed permanent surrender agreements. Although this court found that the parents voluntarily signed the agreements and, thus, were not entitled to a return of their children, we did not challenge the habeas corpus proceedings that the parents had employed.

However, appellants argue that it is improper to file a petition for a writ of habeas corpus in this case. Instead, appellants contend that the natural mother had an adequate remedy at law by way of appeal. Appellants refer to *In re Miller* (1980), 61 Ohio St. 2d 184, 15 O.O. 3d 211, 399 N.E. 2d 1262, in which an appeal was taken in similar circumstances.

We have found that if there is an adequate remedy at law, the writ of habeas corpus will ordinarily not be granted. *Linger* v. *Weiss* (1979), 57 Ohio St. 2d 97, 11 O.O. 3d 281, 386 N.E. 2d 1354, certiorari denied (1979), 444 U.S. 862. Nevertheless, in order for there to be an adequate remedy at law, a remedy must be complete, beneficial, and speedy. *State, ex rel. Liberty Mills,* v. *Locker* (1986), 22 Ohio St. 3d 102, 22 OBR 136, 488 N.E. 2d 883.

In this case, an appeal would not be adequate because it would not be speedy. Before the natural mother could appeal, she would have to move to vacate the juvenile court's entry consenting to her permanent surrender agreement. Since the natural mother has already informally requested this vacation and it has been denied, a more formal motion would be futile and time-consuming. After the denial of the motion, the natural mother would have to appeal to the court of appeals and the losing party would doubtlessly appeal to this court. On the other hand, the court of appeals and this court expedite habeas corpus matters.

Given the mandates of R.C. 3107. 16(B)[1] that, with limited exceptions, a decree of adoption may not be challenged after the expiration of one year, it is clear that a speedy resolution of the issue presented is in the best interests of all involved. It is also important that a child be placed in a *permanent* home environment at the earliest possible moment. Accordingly, we approve, in this case, the use of the statutory procedure of habeas corpus.

This then brings us to the question of whether the permanent surrender agreement[2] should be revoked. In her complaint, appellee alleges that appel-

---

[1] R.C. 3107.16(B) states:

"Subject to the disposition of an appeal, upon the expiration of one year after an adoption decree is issued, the decree cannot be questioned by any person, including the petitioner, in any manner or upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless, in the case of the adoption of a minor, the petitioner has not taken custody of the minor, or, in the case of the adoption of a minor by a stepparent, the adoption would not have been granted but for fraud perpetrated by the petitioner or the petitioner's spouse, or, in the case of the adoption of an adult, the adult had no knowledge of the decree within the one-year period."

[2] The permanent surrender agreement in this case is governed by amended R.C.

lant-department "* * * applied *undue pressure* upon her to surrender her child and wrongfully persuaded her to sign the permanent surrender when such was not her desire." (Emphasis added.) It is not clear whether appellee is arguing undue influence or duress, although in her brief appellee appears to argue duress because she cites to *Tallmadge* v. *Robinson* (1952), 158 Ohio St. 333, 49 O.O. 206, 109 N.E. 2d 496, which establishes a test for duress.

According to Black's Law Dictionary (5 Ed. 1979) 452, "duress" is defined as "* * * any illegal imprisonment, or legal imprisonment used for any illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will. * * * [Citation omitted.] * * * [Duress is] [d]istinguishable from undue influence because in the latter, the wrongdoer is generally in a fiduciary capacity or in a position of trust and confidence with respect to the victim of the undue influence. * * *"

"Undue influence" is "[a]ny improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely. * * *" *Id.* at 1370.

We find that appellant-department's conduct did not constitute duress, but instead is more akin to undue influence since the appellant-department's conduct persuaded appellee to surrender her child, contrary to the appellee's wishes.

Immediately after the baby was born, the representative of appellant-department met alone with appellee in her hospital room and spoke to her about surrendering her child. Appellee was only fifteen years old, single, and had had no prenatal counselling. It appears from the record that appellee had shown no inclination prior to the representative's visit to surrender her child. However, promptly after this interview, the representative convened a meeting at her department and chose adoptive parents for appellee's baby.

Nevertheless, appellee did not surrender her child, but instead took the baby home from the hospital. Appellee's mother claims that appellee became "extremely upset" following a telephone conversation with the representative, in which the representative allegedly stated that the father would have to be notified if the baby was not surrendered. Appellee was persuaded to sign the permanent surrender agreement. Only half an hour after appellee signed, the representative brought appellee before the judge who approved the surrender. This signature and approval occurred on a Friday. By the next Monday, appellee had consulted a lawyer to have the agreement revoked.

Given appellant-department's con-

---

5103.15, effective March 19, 1985 (140 Ohio Laws, Part I, 1836):

"The parents, guardian, or other persons having the custody of a child, may enter into an agreement with any association or institution of this state established for the purposes of aiding, caring for, or placing children in homes, which has been approved and certified by the department of human services, whereby such child is placed in the temporary custody of such institution or association; or such *parent,* guardian, or other person *may make* an *agreement surrendering such child* into the *permanent custody* of such association or institution, to be taken and cared for by such association or institution or placed in a family home. * * *." (Emphasis added.)

duct and appellee's age, marital status, health, mental and emotional condition, and her almost fiduciary trust in the department's representative, we find appellant-department exerted undue influence upon appellee to surrender her child. Because appellee's consent to the permanent surrender agreement was obtained by undue influence, the agreement is invalid.

When a public agency subjects a natural parent, who is a minor, single, and unrepresented by counsel, to undue influence, and as a result of that undue influence, the parent signs an agreement permanently surrendering her child, the parent's consent to the agreement is invalid and the custody of the child remains with the parent.

Based on this, we find that the court of appeals did not abuse its discretion when it held that appellee's consent to the permanent surrender agreement was invalid. An abuse of discretion " '* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " *State, ex rel. Commercial Lovelace Motor Freight, Inc.,* v. *Lancaster* (1986), 22 Ohio St. 3d 191, 193, 22 OBR 275, 277, 489 N.E. 2d 288, 290. We find no such indications here.

The court of appeals also found that appellee was denied her due process rights. In *Hal Artz Lincoln-Mercury, Inc.* v. *Ford Motor Co.* (1986), 28 Ohio St. 3d 20, 28 OBR 83, 502 N.E. 2d 590, paragraph two of the syllabus, we stated that constitutional questions will not be decided until the necessity for a decision arises on the record before the court. We do not need to reach the constitutional due process issue in this case since we have already decided that appellant-department's undue influence invalidated the permanent surrender agreement.

Accordingly, for the above-mentioned reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., concurs in part and dissents in part.

HOLMES, J., dissents.

WRIGHT, J., concurring in part and dissenting in part. I agree with the majority that a petition for a writ of habeas corpus may be an appropriate avenue to contest the validity of a permanent surrender agreement. This court has implicitly held that invalid consent to a surrender agreement is a jurisdictional defect, allowing a writ of habeas corpus to issue. R.C. 2725.05; see, *e.g., Manning* v. *Miami Cty. Children's Services Bd.* (1985), 18 Ohio St. 3d 211, 18 OBR 273, 480 N.E. 2d 770. Moreover, the writ should not automatically be denied in a case such as this on the ground that the petitioner has an adequate remedy at law.[3]

---

[3] It is true that, "[a] writ of habeas corpus will ordinarily be denied where there is an adequate remedy in the ordinary course of law." *In re Hunt* (1976), 46 Ohio St. 2d 378, 75 O.O. 2d 450, 348 N.E. 2d 727, paragraph two of the syllabus. Here a Civ. R. 60(B) motion for relief from judgment, and appeal from the overruling of such motion, could arguably constitute an adequate remedy at law. However, "for a remedy to be adequate, it should be complete in its nature, beneficial, and speedy." *State, ex rel. Ohio State Racing Comm.,* v. *Walton* (1988), 37 Ohio St. 3d 246, 248, 525 N.E. 2d 756, 758. Where the illegal detention of a child is concerned, the time consumed in the filing of a Civ. R. 60(B) motion and appealing from a denial thereof would render that remedy neither speedy nor beneficial. Thus, in a case such as this the speedier remedy of habeas corpus is preferred.

However, I find the court of appeals' issuance of the writ premature, as the Stipulation of Facts is insufficient as a matter of law to support a ruling that appellee was denied due process of law.

There is no dispute over the agreement's facial validity or the propriety of the judicial proceedings in which it was approved by the court. The dispositive issue is whether appellee's consent to surrender the child was the product of duress or undue influence sufficient to invalidate the agreement. As stated in *Tallmadge* v. *Robinson* (1952), 158 Ohio St. 333, 340, 49 O.O. 206, 209, 109 N.E. 2d 496, 500, "[t]he real and ultimate fact to be determined in every case is whether the party affected really had a choice; whether he had his freedom of exercising his will." The factors to be considered in this subjective inquiry are set forth in *Tallmadge* at paragraph two of the syllabus:

"In determining whether a course of conduct results in duress, the question is not what effect such conduct would have upon an ordinary man but rather the effect upon the particular person toward whom such conduct is directed, and in determining such effect the age, sex, health and mental condition of the person affected, the relationship of the parties and all the surrounding circumstances may be considered."

Whether appellee was acting under duress *as described above* is a question not passed upon by the court of appeals. The writ was issued principally on the Stipulation of Facts submitted by the parties, which stipulation, appellant correctly notes, lacks "any mention of fraud, misrepresentation, undue influence, or any other improper act on behalf of the Childrens Services caseworker, Childrens Services attorney, or the Juvenile Court in obtaining the consent of Melissa Marich." The facts which would support a finding of undue influence center principally on the extent and content of the communication between appellee and Michelle Mann of Childrens Services. The parties stipulated that this matter is disputed and will "require the presentation of evidence by the parties." Accordingly, appellee filed two affidavits supporting her version of the pertinent facts, and appellants offered the deposition of Mann supporting a contrary version.

A review of the transcript of the hearing before the court of appeals and the judgment entry of that court reveals that the decision to issue the writ was not based on undue influence or duress, but was, rather, based on three facts: that appellee was only fifteen years old at the time she signed the surrender agreement, that her decision to surrender the child was uncounseled, and that the surrender was approved by the juvenile court only seven days after the infant's birth.[4] These facts standing alone or together are insufficient to warrant a finding that the consent to surrender was *per se* involuntary. A fifteen-year-old girl

---

[4] As stated by Judge Putman:

"[I]t is the unanimous judgment of this Court that on the stipulated facts the proceedings within seven days of the birth involving a 15 year old, uncounseled, that is to say not advised by a lawyer, a minor, apart from what the Ohio statutes say operated to deprive the Complainants of their Federal and State rights to due process of law and we will hear no other evidence. If that helps the loser in the Supreme Court then we understand that. But we are satisfied for the basis of the Record that the Complainants are entitled to [the] relief prayed for. * * *"

clearly has the capacity to consent to a surrender. Second, appellee and her mother admit that they "were advised of their right to consult with counsel prior to executing surrender documents." Finally, as long as the surrender is not effectuated within seventy-two hours of the birth, see Ohio Adm. Code 5101:2-42-09(A)(2),[5] the brevity of the interval between the birth and the surrender does not render the surrender *per se* invalid.

The affidavits and deposition present a close question as to whether undue influence was exerted upon appellee by Children Services representatives. However, I believe this question must be resolved, under the *Tallmadge* test, upon a thorough review of this evidence and all other testimony or evidence relevant to the matter. While we have held that "[i]n an appeal as of right from a judgment of the court of appeals involving an extraordinary writ, this court will consider the case as if the action originally had been filed here," *In re Petition for Mallory* (1985), 17 Ohio St. 3d 34, 17 OBR 28, 476 N.E. 2d 1045, 1046, the evidence presented thus far fails to conclusively establish that appellee was unduly influenced. Thus, I would remand this case to the court of appeals for a hearing directed solely toward the issue just noted.

HOLMES, J., dissenting. Cases dealing with the review of trial court orders relating to the divestiture of parental rights are extremely difficult ones. However, where the facts reasonably support the trial court in its action, I am readily inclined to support that court's determination. Here, I believe the facts would accordingly support such decision.

A review of the record in this case reveals that Melissa was alone with appellant's representative on only one occasion, the afternoon of July 1, 1988. From that date forward, all contacts with appellant's representative were between Melissa's mother individually, or Melissa and her mother together.

First, sometime over the 4th of July weekend, Melissa's mother telephoned appellant's offices and told them Melissa would keep the child. On July 5, appellant's representative telephoned Melissa's mother, with Melissa consenting and present. On July 7, Melissa's mother phoned appellant's representative to advise that Melissa was extremely upset. Later that day, Melissa and her mother met with appellant's representative and signed the surrender documents. Finally, on July 8, Melissa and her mother met with appellant's representative for the surrender of the child. Both Melissa and her mother then appeared before the trial court for the surrender hearing. The court emphasized to both of them that the surrender of the child would be irrevocable, saying:

"Well, Melissa and mother both let me impress on you, this is a final matter * * *. I will shortly put a time on this Entry like eight-forty or something like that today. It's all over as of that date. There is no appeal time or any time to reflect or change your mind or make a different decision. * * * Do, do you understand that, Melissa? I wouldn't want to mislead you. * * * And once that you sign this surrender, of course, you know that all

---

[5] "The surrender is used to terminate the parental rights of a child through a voluntary agreement between an agency and the mother, father, putative father, or legal guardian of the child. * * * Surrenders cannot be executed until seventy-two hours after the birth of the child."

control of your child will go to Knox County Children Services. He will be placed for adoption. You'll have no consultation or input on where that will be, how that will be, what type of home, what type of religion, what type of school the child will go to. All of that will pass from you to the new adoptive parents, you realize that? All right. * * *"

The court continued by further explaining to Melissa the effect of her decision, and then approved the surrender. Appellant's counsel then suggested that Melissa's mother also sign the permanent surrender agreement as Melissa's guardian-representative, which she did, verifying her permission for Melissa's surrender of the child.

The majority, conceding that appellant's conduct did not constitute duress, grounds its finding of undue influence solely on the fact that Melissa was a minor, single, and unrepresented by counsel. It is well-established in making any such finding that a court should consider "the characteristics of the person affected, including the age, sex, state of health, mental capacity, relation of the parties and *all attendant circumstances.*" (Emphasis added.) *Tallmadge* v. *Robinson* (1952), 158 Ohio St. 333, 340, 49 O.O. 206, 209, 109 N.E. 2d 496, 500. The majority, and the court of appeals which rested its grant of habeas corpus relief solely on the rather incomplete stipulation of facts, have failed to consider the presence of Melissa's mother — a married adult homemaker, licensed real estate salesperson and mother of four

— throughout her daughter's dealings with appellant.

At no time prior to the surrender of Melissa's child did appellee seek the representation of an attorney. Melissa's mother was present when appellant's representative read aloud the "Affidavit of Caseworker and Acknowledgement of Natural Parent(s)," which clearly explains the right to seek and consult legal counsel prior to the permanent surrender of the child. This affidavit was acknowledged by Melissa in the presence of her mother. The mother was present with Melissa when the trial judge carefully and thoroughly explained the finality of her decision. With the assurances of both Melissa and her mother that they understood the effect of the permanent surrender of the child, the court approved Melissa's decision.

The issues and implications placed before us in this case are difficult, and the rule of finality embodied in the adoption statutes is often harsh. But not without reason; for once the decision to permanently surrender a child is made, two additional persons enter the child's life — the adoptive parents, whose rights and interests are fraught with emotions equal to those of the natural parent or parents. By today's decision, these adoptive parents are left to deal with the loss of the child. Because I believe the majority, in reaching its finding of undue influence, has erroneously failed to consider the presence of Melissa's mother throughout, as well as the careful admonition of the trial court to them both, thus making a bad situation unnecessarily worse, I must respectfully dissent.