**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. C.V. v. Adoption Link, Inc.,* Slip Opinion No. 2019-Ohio-2118.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2118

THE STATE EX REL. C.V. *v*. ADOPTION LINK, INC., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. C.V. v. Adoption Link, Inc.,* Slip Opinion No. 2019-Ohio-2118.]**

*Prohibition and habeas corpus—R.C. 5103.15(B)—Permanent-surrender agreement—Writ of prohibition against juvenile-court judge granted—Writ of prohibition against probate-court judge denied—Writ of habeas corpus denied.*

(No. 2018-1857—Submitted March 26, 2019—Decided May 30, 2019.)

IN PROHIBITION and HABEAS CORPUS.

_____

**Per Curiam.**

{¶ 1} Relator, C.V., is the biological mother of N.V., born August 10, 2018. In this original action, she seeks writs of prohibition and habeas corpus to (1) vacate a Greene County Juvenile Court judge's approval of her agreement to permanently surrender N.V. to the custody of Adoption Link, Inc., (2) halt adoption proceedings in the Greene County Probate Court, and (3) compel the return of N.V. to her care and custody.  For the reasons explained below, we grant C.V.'s request for a writ

of prohibition against the Greene County Juvenile Court judge, we deny her request for a writ of prohibition against the Greene County Probate Court judge, and we deny her request for a writ of habeas corpus. In addition, we deny the motion for oral argument and deny as moot the motion for leave to file a surreply brief.

## I. Background

{¶ 2} The essential facts of this case are not in dispute. On the afternoon of August 10, 2018, C.V. gave birth to a baby girl in the bathroom of her residence. C.V. has a history of substance abuse and addiction, including heroin use, and before going into labor, she did not know she was pregnant. Fire-department personnel transported C.V. and the baby to Good Samaritan Hospital in Cincinnati.

{¶ 3} At 11:00 a.m. the next morning, C.V. met with a Good Samaritan Hospital social worker, who showed her adoption-agency pamphlets. C.V. selected Adoption Link. Within an hour, Naomi Ewald, the director of Adoption Link, sent profiles of four prospective adoptive families, and C.V. selected K.B.

{¶ 4} That afternoon, C.V. met with Adoption Link's adoption assessor, Melissa Manzi. During that meeting, which took place in C.V.'s hospital room, C.V. executed a temporary-custody agreement, transferring temporary custody to Adoption Link for a period of 61 days. In addition, she signed a form titled "Ohio Law and Adoption Materials," acknowledging that she had been provided with written materials on adoption and was fully aware of the ramifications of surrendering custody of her child, and she answered questions so that Manzi could fill out the "Social and Medical History" form required by R.C. 3107.09(A) and (B).

{¶ 5} C.V. was discharged from the hospital the following day, and later that evening, she began her treatment regimen for heroin addiction. Two days later, on August 14, she had her first assessment meeting for admission to an inpatient addiction-treatment facility.

2

**{¶ 6}** Also on August 14, C.V. executed a permanent-surrender-of-child agreement, assigning permanent custody of N.V. to Adoption Link.

**{¶ 7}** The next day, August 15, Adoption Link filed the permanent-surrender agreement, along with the "Ohio Law and Adoption Materials" and "Social and Medical History" forms, with the clerk of the Greene County Juvenile Court. On August 16, the Greene County Juvenile Court judge signed the bottom of the surrender agreement, below preprinted text that stated, "I hereby approve the transfer of permanent custody," and "I find that continuation in the home is contrary to the best interest of the child and that the placement is in the best interest of the child." The juvenile-court judge also signed a judgment entry, which, along with the court-approved surrender agreement, was filed the next day, August 17, finding that the surrender agreement was in N.V.'s best interest, finding that C.V. had entered into the agreement knowingly and voluntarily, granting Adoption Link permanent custody, and terminating C.V.'s parental rights.

**{¶ 8}** Prior to filing the present action, C.V. made two attempts to revoke the surrender agreement based on an alleged change of circumstances: she filed a "Motion to Withdraw Consent of Adoption" in the Hamilton County Probate Court and a "Motion to Withdraw Consent of the Permanent Surrender & Appeal to Petition of Adoption" in the Greene County Juvenile Court. Both motions were denied.

**{¶ 9}** On December 31, 2018, C.V. commenced the present suit for writs of prohibition and habeas corpus. In addition to the Greene County Juvenile Court judge and Adoption Link, she named as respondents the Greene County Probate Court judge, whom she believes is presiding over adoption proceedings involving N.V., and the prospective adoptive mother, K.B. All four respondents filed motions to dismiss, which we denied, 154 Ohio St.3d 1516, 2019-Ohio-695, 118 N.E.3d 254. On February 12, 2019, we issued an order staying all adoption proceedings. 154 Ohio St.3d 1505, 2019-Ohio-489, 116 N.E.3d 1285.

**{¶ 10}** On March 5, 2019, C.V. filed an unopposed motion for oral argument.  And at the close of briefing on the merits, K.B. filed a motion for leave to file a surreply brief to respond to arguments raised in C.V.'s reply brief.

## II. Analysis

### A.  Motion for oral argument

**{¶ 11}** We have discretion to grant oral argument in an original action, S.Ct.Prac.R. 17.02, and in exercising that discretion, we consider whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals, *State ex rel. Sands v. Court of Common Pleas Judge,* 155 Ohio St.3d 238, 2018-Ohio-4245, 120 N.E.3d 799, ¶ 6.  In this case, we conclude that none of those factors is present and that the parties' briefs are sufficient to resolve the issues raised.  We therefore deny the motion.

### B.  C.V.'s request for a writ of prohibition against
### the Greene County Juvenile Court judge

**{¶ 12}** Three elements are necessary for a writ of prohibition to issue: the exercise of judicial power, the lack of authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of law.  *State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13.  However, if the absence of jurisdiction is patent and unambiguous, a relator need not establish the third prong, the lack of an adequate remedy at law.  *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 15.

**{¶ 13}** C.V.'s complaint seeks a writ of prohibition against the Greene County Juvenile Court judge on the ground that he had no legal authority to approve the surrender agreement or terminate her parental rights.  There is no dispute that the juvenile-court judge's approval of the surrender agreement was an exercise of judicial authority.  The question we must resolve is whether he patently and unambiguously lacked jurisdiction to issue that approval.

**{¶ 14}** Ohio's juvenile courts have limited jurisdiction: they can exercise only the authority conferred on them by the General Assembly. *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, 44 N.E.3d 239, ¶ 14. In certain situations, an adoption agency is required to seek and a juvenile court is authorized to provide approval of a permanent-surrender agreement. R.C. 5103.15(B)(1) ("(B)(1) surrenders"). But for a limited class of surrender agreements—agreements with private child-placing agencies for the placement of children under six months of age for the sole purpose of adoption—the agency is not required to seek and the juvenile court has no authority to grant approval of the agreement. R.C. 5103.15(B)(2) ("(B)(2) surrenders"). With respect to (B)(2) surrenders, the agency is required only to "notify" the court of the agreement within two business days and the juvenile court is authorized only to journalize the notification. *Id.*; *see also* Juv.R. 38(B)(2) ("An agreement for the surrender of permanent custody of a child to a private service agency is not required to be approved by the court if the agreement is executed solely for the purpose of obtaining an adoption of a child who is less than six months of age on the date of the execution of the agreement"). The role of the juvenile court in a (B)(2) surrender is purely ministerial. *See, e.g., In re E.B.*, 9th Dist. Summit No. 23850, 2008-Ohio-784, ¶ 15 (holding that juvenile court had no jurisdiction to hear a challenge to a previously filed (B)(2) surrender agreement because the court under R.C. 5103.15(B)(2) had "merely journalize[d]" the agreement and had lacked authority to "approve" it).

**{¶ 15}** The precise language of the statute conferring jurisdiction upon a juvenile court regarding surrender agreements is as follows: "The juvenile court has exclusive original jurisdiction * * * [t]o hear and determine * * * requests for court approval of permanent custody agreements that are filed pursuant to section 5103.15 of the Revised Code." R.C. 2151.23(A)(9). A (B)(2) surrender does not involve a "request[] for court approval." It is therefore outside the scope of a juvenile court's statutory authority to approve.

**{¶ 16}** It is plain from the record that Adoption Link did not believe that it was operating under R.C. 5103.15(B)(1). Although Adoption Link filed the agreement with the Greene County Juvenile Court clerk's office, there is no evidence in the record to suggest that it filed a motion or other pleading requesting court approval of the surrender agreement. In addition, there is no evidence indicating that it filed a case plan with the juvenile court, as it would have been required to do for a (B)(1) surrender but not for a (B)(2) surrender. Furthermore, the juvenile-court judge's judgment entry that purported to approve the surrender agreement expressly stated that the court had been "notified" of the agreement "as required by Ohio Revised Code Section 5103.15(B)(2)," thus indicating that this was not a (B)(1) surrender even though he made findings and supposedly approved the agreement.

**{¶ 17}** R.C. 5103.151(C) does not provide a jurisdictional basis for the juvenile-court judge to approve the Adoption Link surrender agreement. That statute provides that if certain conditions are met, then

> [a] juvenile court may approve an agreement entered into under division (B)(1) of section 5103.15 of the Revised Code between a * * * private child placing agency and the parents of a child who is less than six months of age and will be, if adopted, an adopted person * * * without the parents both appearing before the court.

Based on this language, it is correct to say that *some* permanent surrenders involving children six months of age and younger fall under the terms of R.C. 5103.15(B)(1).

**{¶ 18}** But a child's young age alone does not make a surrender agreement subject to R.C. 5103.15(B)(2); rather, a surrender agreement is subject to R.C. 5103.15(B)(2), and *not* R.C. 5103.15(B)(1), when "the child is less than six months

of age *and* the parents are entering the agreement with a private child-placing agency *for the sole purpose of adoption*." (Emphasis added.) Notably, this phrase does not appear in R.C. 5103.151(C)'s description of a (B)(1) surrender agreement. The difference between a (B)(1) surrender and a (B)(2) surrender is not in how the agency characterizes the surrender or elects to proceed in the juvenile court—the fundamental difference is in whether the surrender is for the *sole* purpose of adoption. A surrender agreement, by definition, cannot be subject to *both* R.C. 5103.15(B)(1) *and* (B)(2).

{¶ 19} The evidence is overwhelming that C.V. and Adoption Link executed the surrender agreement for the sole purpose of adoption. Adoption Link is, after all, an adoption agency, not a general social-services organization. Naomi Ewald, the director of Adoption Link, attested that C.V. "signed the Permanent Surrender of Child for the placement *and adoption* of [N.V.] with Adoption Link, Inc." (Emphasis added.) And when contacted about C.V., Ewald immediately dispatched Melisa Manzi, who describes her position with Adoption Link as "an *adoption* assessor," to C.V.'s hospital room. (Emphasis added.) And the surrender agreement itself notes that C.V. "has chosen an adoptive parent to raise this child."

{¶ 20} In short, any attempt to recharacterize the juvenile-court judge's judgment entry as involving a proceeding under R.C. 5103.15(B)(1) in order to justify his general jurisdiction over the matter fails to acknowledge the plain language of R.C. 5103.15(B) and the undisputed evidence. "A juvenile court may exercise jurisdiction only if *expressly* granted the authority to do so by statute." (Emphasis added.) *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, 978 N.E.2d 146, ¶ 13. The juvenile-court judge's purported approval of the (B)(2) surrender agreement between C.V. and Adoption Link was a legal nullity and must be voided. *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995) (holding that judgment entry issued by court lacking jurisdiction was a nullity and vacating the entry).

**{¶ 21}** Moreover, by treating this as a (B)(1) surrender even though he cited R.C. 5103.15(B)(2), the juvenile-court judge made factual findings concerning N.V.'s best interest and C.V.'s state of mind, and he terminated C.V.'s parental rights—all without conducting a hearing or allowing C.V. any opportunity to present her case.

**{¶ 22}** The facts presented by C.V. are egregious. Some of the most troubling are that C.V. was not aware that she was pregnant until she gave birth, so she certainly had no opportunity to consider in advance what to do with the baby. But Adoption Link rushed the surrender process. Within 24 hours of N.V.'s birth, as C.V. was beginning to experience heroin withdrawal, Adoption Link employees were already in her hospital room, collecting signatures on various legal documents and conducting the mandatory adoption assessment. R.C. 5103.152 requires a waiting period of at least 72 hours after the assessment before a parent can sign a permanent-surrender agreement. At Adoption Link's instigation, C.V. signed the surrender agreement, at most, 76 hours after the assessment.[1] When she signed, C.V. was still suffering from heroin withdrawal as well as from drastic blood loss and anemia, the product of an undiagnosed postpartum hemorrhage that would require surgery three days later.

**{¶ 23}** Other circumstances of the surrender suggest the possibility of fraud, duress, or undue influence. For example, during the assessment meeting, Manzi offered to pay C.V., a heroin addict, $1,000 for her expenses when an adoption match was made, plus an additional $2,000 upon execution of the surrender agreement. And Adoption Link provided a lawyer to counsel C.V. about signing the agreement without disclosing that the attorney, Darlene Rogers, was an undisclosed agent working for Adoption Link.

---

[1] Ewald's notes indicate that she assigned Manzi, the assessor, to meet with C.V. "on Saturday, August 11 at 3 p.m." The permanent-surrender agreement was executed on August 14 at 7:14 p.m.

**{¶ 24}** Fortunately, as a consequence of our judgment today, C.V. will have an opportunity to present her arguments for revoking the surrender agreement before the probate court can determine whether to terminate her parental rights, an opportunity she was not afforded prior to the juvenile-court judge's decision

**{¶ 25}** We grant the writ of prohibition against the Greene County Juvenile Court judge and vacate his judgment entry approving the surrender agreement.

*C. C.V.'s petition for a writ of habeas corpus*

**{¶ 26}** To obtain a writ of habeas corpus in a child-custody case, the petitioner must establish that (1) the child is being unlawfully detained and (2) the petitioner has a superior legal right to custody of the child. *State ex rel. Bruggeman v. Auglaize Cty. Court of Common Pleas*, 87 Ohio St.3d 257, 719 N.E.2d 543 (1999). Habeas corpus relief "is the exception rather than the general rule in child custody actions." *Evans v. Klaeger*, 87 Ohio St.3d 260, 261, 719 N.E.2d 546 (1999).

**{¶ 27}** A writ of habeas corpus will not issue if the petitioner has an adequate remedy in the ordinary course of law. *Rammage v. Saros*, 97 Ohio St.3d 430, 2002-Ohio-6669, 780 N.E.2d 278, ¶ 9. C.V. has an adequate remedy in the ordinary course of law by which to contest the validity of the Adoption Link surrender agreement: she can intervene in the probate-court adoption proceedings. *See Barnebey v. Zschach*, 71 Ohio St.3d 588, 646 N.E.2d 162 (1995) (ability to file a motion in adoption proceedings in probate court was available adequate remedy, and thus, relief in habeas corpus was unavailable). If she does intervene, the probate court should determine whether the required consents have been obtained.

**{¶ 28}** Because we conclude that C.V. has an adequate remedy available to her in the ordinary course of law, we deny her request for a writ of habeas corpus. It is therefore unnecessary to consider the substantive legal arguments she presents in favor of the issuance of a writ of habeas corpus in proposition of law Nos. 1 through 8. And because K.B.'s motion for leave to file a surreply brief seeks to

supplement the legal arguments in opposition to proposition of law No. 5, that motion is denied as moot.

### D. C.V.'s request for a writ of prohibition against
### the Greene County Probate Court judge

**{¶ 29}** C.V. seeks a writ of prohibition against the Greene County Probate Court judge to prevent him from exercising power over N.V.'s adoption proceedings. In Ohio, probate courts are vested with "original and exclusive jurisdiction over adoption proceedings." *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, ¶ 9. As a general rule, a probate court may grant a petition for the adoption of a minor only when written consent to the adoption has been executed by the mother of the minor, the father of the minor (in certain circumstances), *and* "[a]ny person or agency having permanent custody of the minor or authorized by court order to consent." R.C. 3107.06. However, parental consent to the adoption is not required, and the consent of the agency having permanent custody of the child is sufficient for the adoption to proceed, if the parent "has entered into a voluntary permanent custody surrender agreement" under R.C. 5103.15(B) and the requirements of R.C. 3107.071 have been met. R.C. 3107.07(C).

**{¶ 30}** Before entering a final decree of adoption, the probate court has an affirmative duty to determine whether the required consents have been obtained. R.C. 3107.14(C). To satisfy that duty in this case, the probate court must grant C.V. leave to intervene if she seeks leave and then determine whether the surrender agreement is valid. If the probate court determines that the surrender agreement is valid, then the adoption may proceed without her consent. But if the probate court determines that the agreement is not valid, then the adoption may not proceed without C.V.'s consent.

**{¶ 31}** It follows from this discussion that we will not issue a writ of prohibition against the Greene County Probate Court judge. The determination

10

whether the requisite consents have been obtained falls squarely within the statutory jurisdiction of the probate court. We therefore reject proposition of law Nos. 9 and 10, which challenge the jurisdiction of the probate court to determine the validity of the surrender agreement.

{¶ 32} We also reject proposition of law No. 11, which attempts to invoke the jurisdictional-priority rule. The jurisdictional-priority rule provides that, " '[a]s between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and settle the rights of the parties.' " (Brackets sic.) *State ex rel. Dunlap v. Sarko*, 135 Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 9, quoting *State ex rel. Phillips v. Polcar*, 50 Ohio St.2d 279, 364 N.E.2d 33 (1977), syllabus. The date on which the adoption petition was filed in Greene County Probate Court is not in the record, and therefore, we cannot determine whether C.V.'s filing in the Hamilton County Probate Court was first in time.

{¶ 33} We deny the request for a writ of prohibition against the Greene County Probate Court judge.

### III. Conclusion

{¶ 34} For the reasons stated above, we grant the request for a writ of prohibition against the Greene County Juvenile Court judge, deny the request for a writ of habeas corpus, and deny the request for a writ of prohibition against the Greene County Probate Court judge. We also deny K.B.'s motion for leave to file a surreply brief and C.V.'s motion for oral argument.

Writ of prohibition against the Greene County Juvenile Court judge granted, writ of prohibition against the Greene County Probate Court judge denied, and writ of habeas corpus denied.

O'CONNOR, C.J., and FRENCH and DONNELLY, JJ., concur.

STEWART, J., concurs in part and concurs in judgment only in part, with an opinion.

DEWINE, J., concurs in part and dissents in part, with an opinion joined by KENNEDY and FISCHER, JJ.

_____

**STEWART, J., concurring in part and concurring in judgment only in part.**

{¶ 35} I agree with the per curiam opinion that we should deny C.V.'s requests for a writ of prohibition against the Greene County Probate Court judge and for a writ of habeas corpus. I also agree that a writ of prohibition against the Greene County Juvenile Court judge should issue. Nevertheless, I concur only in the judgment with regard to the writ against the juvenile-court judge because I would issue the writ for reasons different than those expressed in the per curiam opinion.

{¶ 36} C.V. seeks a writ of prohibition against the juvenile-court judge to both prohibit future action by the juvenile court and to relieve her from its holding that she knowingly and voluntarily entered into the surrender agreement with Adoption Link, Inc. C.V.'s remedy in the form of intervention in the adoption proceedings is adequate only if the probate court is allowed to review the voluntariness of the surrender agreement in the first instance, without giving any consideration or preclusive effect to the juvenile court's determination. Although the opinion concurring in part and dissenting in part notes that the juvenile court's determination should not be given preclusive effect, the opinion fails to explain how this court has the authority to limit the juvenile court's determination in this way without issuing a writ of prohibition or reviewing the matter through a discretionary appeal and reversing it.

**{¶ 37}** To be entitled to a writ of prohibition, C.V. must establish: (1) the exercise of judicial power, (2) the lack of authority for the exercise of that power, and (3) the lack of an adequate remedy in the ordinary course of law. *See State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13. The general understanding in Ohio is that a writ of prohibition may issue to prohibit future judicial action but not to remediate prior unauthorized actions by a court. *State ex rel. Stefanick v. Marietta Mun. Court*, 21 Ohio St.2d 102, 104, 255 N.E.2d 634 (1970) (holding that prohibition cannot be used "to review the regularity of an act already performed"). Nevertheless, this court has recognized an exception to the general principle that prohibition is prospective rather than remedial, stating that when an " 'inferior court patently and unambiguously lacks jurisdiction over the cause, a writ of prohibition will be issued to prevent the unauthorized exercise of jurisdiction *and to correct the results of previous jurisdictionally unauthorized actions.*' " (Emphasis added.) *State ex rel. Gains v. Maloney*, 102 Ohio St.3d 254, 2004-Ohio-2658, 809 N.E.2d 24, ¶ 10, quoting *State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, 789 N.E.2d 203, ¶ 14.

**{¶ 38}** The per curiam opinion correctly notes that Adoption Link submitted the surrender agreement signed by C.V. to the juvenile-court judge for journalization in accord with R.C. 5103.15(B)(2) and did not request approval under R.C. 5103.15(B)(1). R.C. 5103.15(B)(2) states: "The parents of a child less than six months of age may enter into an agreement with a private child placing agency surrendering the child into the permanent custody of the agency without juvenile court approval if the agreement is executed solely for the purpose of obtaining the adoption of the child." Unlike a surrender agreement under R.C. 5103.15(B)(1), an R.C. 5103.15(B)(2) surrender agreement does not require court approval—the juvenile court's role under R.C. 5103.15(B)(2) is to "journalize the notices it receives."

**{¶ 39}** The juvenile-court judge issued a judgment entry stating that he had been "properly notified by Adoption Link, Inc., that the Permanent Surrender of Child Form 1666 was executed by" C.V. and that he had been "duly notified of the executed agreement and the placement of the child for adoption as required by Ohio Revised Code Section 5103.15(B)(2)." This suffices to show that C.V. signed an R.C. 5103.15(B)(2) surrender agreement.

**{¶ 40}** As the juvenile court stated in its judgment entry, C.V. executed Ohio Department of Job and Family Services Form 1666 ("Form 1666"), which is titled "Permanent Surrender of Child." That form allows for the private child-placing agency ("PCPA") to assume, and retain, permanent custody of a child. *See* Ohio Adm.Code 5101:2-42-04(B)(3). "When a PCPA executes a [Form 1666] involving a child under six months of age where the agreement is executed solely for obtaining the adoption of the child and the parents(s) [sic] consent to the permanent surrender, approval by the juvenile court is not required." Ohio Adm.Code 5101:2-42-09(F). The Form 1666 signed by C.V. explicitly states when the juvenile court's approval *is* required: "Under Ohio law, Ohio Revised Code Section 5103.15(B), approval of the juvenile court is required if this agreement is entered into by a public children service agency or is executed by a private child placing agency for a child six months of age or older."

**{¶ 41}** Because this was an R.C. 5103.15(B)(2) surrender agreement, the juvenile court had no statutory authority to approve the agreement, it should not have made findings regarding whether the agreement was in the best interest of the child under R.C. 5103.15(B)(1), and it had no basis for making his finding that "the birthmother was notified of her respective rights and entered into the Permanent Surrender Agreement knowingly and voluntarily." Those findings would have been required only if the surrender agreement had been submitted under R.C. 5103.15(B)(1).

14

**{¶ 42}** However, contrary to the view of the opinion concurring in part and dissenting in part, even if Adoption Link had requested R.C. 5103.15(B)(1) approval (again the facts in this case clearly show that Adoption Link was proceeding under R.C. 5103.15(B)(2) and simply asking the court to journalize the agreement), the surrender agreement in this case could not have been approved under R.C. 5103.15(B)(1), because C.V. did not personally appear before the juvenile court before the judge issued the findings and entered the approval. Although R.C. 5103.151(C) explicitly states that a juvenile-court judge *may* approve an R.C. 5103.15(B)(1) surrender agreement without the parents having personally appeared before the court, for a judge to have authority to do this, *both parents* must have signed the permanent-surrender agreement. *See* R.C. 5103.151(C). It is undisputed that C.V. was the only parent who signed the surrender agreement in this case. Furthermore, R.C. 5103.151(C) is an exception to the general rule contained in R.C. 5103.151(B), which states:

> *Except as provided in division (C) of this section*, a parent of a minor who will be, if adopted, an adopted person as defined in section 3107.45 of the Revised Code shall do all of the following as a condition of a juvenile court approving the parent's agreement with a public children services agency or private child placing agency under division (B)(1) of section 5103.15 of the Revised Code:
>
> *(1) Appear personally before the court.*

(Emphasis added.) Accordingly, the juvenile court was without authority to approve the agreement under R.C. 5103.15(B)(1) without C.V.'s having appeared before it. The per curiam opinion agrees that this was a legal error.

{¶ 43} Where I disagree with the per curiam opinion is in its assertion that the juvenile court acted without subject-matter jurisdiction. R.C. 2151.23(A)(9) vests juvenile courts with exclusive original jurisdiction "[t]o hear and determine requests for the extension of temporary custody agreements, and requests for court approval of permanent custody agreements, that are filed pursuant to section 5103.15 of the Revised Code." Although the per curiam opinion interprets this provision to mean that the filing of an R.C. 5103.15(B)(2) surrender agreement do not invoke a juvenile court's subject-matter jurisdiction—because the filing does not involve a "request" for approval under R.C. 5103.15 but is, rather, a request for the purely ministerial act of journalizing the agreement—this interpretation is logically inconsistent with other provisions of R.C. Chapter 5103.

{¶ 44} For instance, R.C. 5103.153(A)(2) requires a juvenile court to review an R.C. 5103.15(B)(2) agreement every six months in the absence of notification that the child has been placed for adoption:

> A juvenile court shall conduct a review hearing of an agreement entered into under division (B)(2) of section 5103.15 of the Revised Code once every six months after the court is notified of the agreement if the agreement is still in effect and the court has not been notified that the child who is the subject of the agreement has been placed for adoption. The private child placing agency that entered into the agreement shall file a case plan, prepared pursuant to section 2151.412 of the Revised Code, with the court at the review hearing.

{¶ 45} A juvenile court could not have continuing jurisdiction to conduct a hearing to review an R.C. 5103.15(B)(2) agreement if the filing of the agreement did not invoke the court's original jurisdiction. A review hearing is clearly not

ministerial. Therefore, I believe that the better understanding of a juvenile court's jurisdiction under R.C. 2151.23(A)(9) is that the juvenile court has jurisdiction over both R.C. 5103.15(B)(1) and (B)(2) surrender agreements. Accordingly, in my view, the juvenile court had subject-matter jurisdiction pursuant to R.C. 2151.23(A)(9) because this case involved the filing of an R.C. 5103.15 surrender agreement.

{¶ 46} Despite his having subject-matter jurisdiction, the judge's authority to approve the surrender agreement in this case was limited by R.C. 5103.151(B) and (C). There is no question that the juvenile-court judge acted outside his authority under the statute by approving the surrender agreement under R.C. 5103.15(B)(1) without C.V.'s having appeared before the court. Nevertheless, errors like these render that part of the journal entry voidable, not void ab initio for want of subject-matter jurisdiction. *State v. Smith*, 10th Dist. Franklin No. 06AP-1059, 2007-Ohio-2873, ¶ 10 ("When a trial court lacks subject matter jurisdiction, its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable"); *see In re Complaint of Pilkington N. Am., Inc.*, 145 Ohio St.3d 125, 2015-Ohio-4797, 47 N.E.3d 786, ¶ 22.

{¶ 47} Although C.V. cannot show that the juvenile court patently and unambiguously lacked subject-matter jurisdiction to act in this case, she has nevertheless met her burden of proving that she is entitled to a writ of prohibition.

{¶ 48} First, the juvenile-court judge's purported approval of the surrender agreement under R.C. 5103.15(B)(1) was an exercise of judicial power, and second, pursuant to R.C. 5103.151(C), that purported approval was not authorized by law. Third, C.V. has no adequate remedy at law by way of appeal from the juvenile court's decision.

{¶ 49} "[I]n order for there to be an adequate remedy at law, a remedy must be complete, beneficial, and speedy." *Marich v. Knox Cty. Dept. of Human Servs./Children Servs. Unit*, 45 Ohio St.3d 163, 165, 543 N.E.2d 776 (1989), citing

*State ex rel. Liberty Mills v. Locker*, 22 Ohio St.3d 102, 488 N.E.2d 883 (1986).  In *Marich,* this court held that a biological mother could proceed with her claim in habeas corpus because the appeal process would not provide her an adequate remedy at law due to the time delay it would involve.  Specifically, we noted:

> In this case, an appeal would not be adequate because it would not be speedy.  Before the natural mother could appeal, she would have to move to vacate the juvenile court's entry consenting to her permanent surrender agreement.  Since the natural mother has already informally requested this vacation and it has been denied, a more formal motion would be futile and time-consuming.  After the denial of the motion, the natural mother would have to appeal to the court of appeals and the losing party would doubtlessly appeal to this court.  On the other hand, the court of appeals and this court expedite habeas corpus matters.

*Id.* at 165.

{¶ 50} As was true in *Marich*, C.V.'s remedy by way of an appeal from the juvenile court's order is inadequate.  Like the mother in *Marich*, C.V. has already asked for and been denied relief from judgment by the juvenile court.  If C.V. were required to appeal from that judgment, not only would there be a time delay as she prepared for argument and awaited a decision but that decision could result in a remand to the juvenile court for a determination whether it should proceed under R.C. 5103.15(B)(1) or (B)(2).  Delay associated with the appeal and potential remand would also interfere in the adoption proceedings in probate court, causing further delay.  Meanwhile, N.V., the infant child, would be growing older each day without any final determination with regard to permanent custody.  Simply put, under the facts of this case, an appeal is not an adequate remedy.

**{¶ 51}** Therefore, I vote to grant C.V.'s request for a writ of prohibition against the juvenile-court judge both to prevent the judge from taking any further action in this matter and to remediate the erroneous judgment entry that purported to make findings and declarations that the juvenile court had no authority to make under the facts of this case. Although I realize that in taking this position I depart from the general rule that a writ of prohibition will not issue to remediate prior unauthorized actions unless there is a patent and unambiguous lack of subject-matter jurisdiction, I believe that this case warrants such a departure and I believe that the principles behind this court's case law support it.

**{¶ 52}** *In State ex rel. Adams v. Gusweiler*, the first case in which this court departed from its earlier longstanding precedent that "prohibition may be invoked only to prevent a future act and not to undo an act already performed," we noted that "strict adherence to that rule exalts form over substance." 30 Ohio St.2d 326, 329, 285 N.E.2d 22 (1972). We also noted in that case that "a court which has jurisdiction to issue the writ of prohibition as well as the writs of procedendo and mandamus has plenary power, not only to prevent excesses of lower tribunals, *but to correct the results thereof and to restore the parties to the same position they occupied before the excesses occurred.*" (Emphasis added.) *Id.* at 330.

**{¶ 53}** In a case such as this, a case in which every justice of the court agrees that the juvenile court's findings and decision should not be considered or given preclusive effect in the adoption proceedings either because they were made in error or because they were rendered without subject-matter jurisdiction and in which the custody of an infant needing a permanent home hangs in the balance, it would be unconscionable not to issue the writ. I therefore agree that the writ of prohibition that C.V. seeks should be granted.

**{¶ 54}** The fact that the juvenile-court judge erroneously made findings under R.C. 5103.15(B)(1), however, did not affect the juvenile court's jurisdiction to journalize the notice provided in Form 1666 pursuant to R.C. 5103.15(B)(2). By

19

granting the writ to remove from the journal entry all language relating to R.C. 5103.15(B)(1), we would leave intact a journal entry that satisfies R.C. 5103.15(B)(2) and C.V. would have the opportunity to contest the validity of the surrender agreement by intervention in the probate-court proceedings.

{¶ 55} Since the probate court is in the best position to act as the finder of fact when determining the issue of the validity of the surrender agreement and since this court has instructed the probate court to do just that with the grant of a writ of prohibition against the juvenile court, I see no reason why the per curiam opinion addresses facts that may be relevant in the probate-court case but are not relevant to the issues before us.

_____

**DEWINE, J., concurring in part and dissenting in part.**

{¶ 56} I join the per curiam opinion except with regard to its grant of a writ of prohibition against the Greene County Juvenile Court judge. I would deny the writ of prohibition because the Greene County Juvenile Court did not patently and unambiguously lack jurisdiction to approve the surrender agreement.

{¶ 57} R.C. 5103.15(B) sets forth the procedures by which a private child-placing agency may obtain permanent custody of a child. With a narrow exception set forth in subsection (B)(2), those procedures require the juvenile court to approve the agreement. Subsection (B)(1) states that the "court may approve the permanent surrender agreement if it determines that the agreement is in the best interest of the child and, in the case of an agreement between a parent and an agency, the requirements of section 5103.151 of the Revised Code are met." Hence, under subsection (B)(1), a juvenile court plainly has jurisdiction to approve permanent-surrender agreements. And nothing in that subsection limits the jurisdiction of the court over such agreements based on the age of the child or the purpose of the agreement.

**{¶ 58}** Contrary to the per curiam opinion's reading, subsection (B)(2) merely creates a narrow exception to the juvenile-court-approval requirement. It states that the parents of a child may enter into a permanent-custody agreement without juvenile-court approval if the child is under six months of age and the agreement is for the sole purpose of adoption. But nothing in that provision takes away the jurisdiction that (B)(1) provides. Thus, the Greene County Juvenile Court judge plainly had subject-matter jurisdiction over the permanent-custody agreement; whether he exercised that jurisdiction appropriately in approving the agreement is a different issue. The mere fact that under R.C. 5103.15(B)(2) the judge may not have been *required* to approve the agreement does not mean that he lacked subject-matter jurisdiction to do so. Accordingly, I would reject C.V.'s 14th proposition of law.

**{¶ 59}** C.V.'s 12th and 13th propositions of law go to whether the Greene County Juvenile Court judge properly exercised his jurisdiction. C.V. has an adequate remedy at law by intervening in the probate-court case to raise these arguments; thus, the arguments raised under these propositions provide no basis for issuing a writ of prohibition.

**{¶ 60}** I agree that C.V.'s remedy is to intervene in the Greene County Probate Court proceedings. If she does so properly and in a timely manner, the probate court will first need to determine whether the required consents to surrender the child were obtained. In those proceedings, no preclusive effect should be given to the Greene County Juvenile Court's August 17, 2018 judgment entry. C.V. was not a party to the proceeding before the court, she was not notified of it, and she did not appear. Accordingly, she has not had a full and fair opportunity to litigate the validity of the surrender agreement. *See Hicks v. De La Cruz*, 52 Ohio St.2d 71, 74, 369 N.E.2d 776 (1977).

KENNEDY and FISCHER, JJ., concur in the foregoing opinion.

_____

Kuhn Limited and Ryan D. Kuhn, for relator.

Voorhees & Levy, L.L.C., and Michael R. Voorhees, for respondent Adoption Link, Inc.

Stephen K. Haller, Greene County Prosecuting Attorney, and Elizabeth A. Ellis, Assistant Prosecuting Attorney, for respondents the Greene County Juvenile Court and Probate Court judges.

Zeiger, Tigges & Little, L.L.P., and Daniel P. Mead, for respondent K.B.

_____